[Cite as *State v. Ruggles*, 2020-Ohio-2886.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY


| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NOS. CA2019-05-038 |
| | | CA2019-05-044 |
| | : | CA2019-05-045 |
| - vs - | | CA2019-05-046 |
| | : | |
| | | O P I N I O N |
| ERIC J. RUGGLES, | : | 5/11/2020 |
| Appellant. | : | |


CRIMINAL APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
Case Nos. 17CR33134 and 18CR35021


David P. Fornshell, Warren County Prosecuting Attorney, Kirsten A. Brandt, 520 Justice Drive, Lebanon, Ohio 45036, for appellee

Arenstein & Gallagher, William Gallagher, Elizabeth Conkin, 114 E. Eighth Street, Cincinnati, Ohio 45202, for appellant



**HENDRICKSON, P.J.**

{¶1}  Appellant, Eric J. Ruggles, appeals his convictions in the Warren County Court of Common Pleas for multiple sexual offenses.

{¶2}  In June 2017, the Warren County Grand Jury indicted appellant on 17 sexual offenses in Case No. 17CR33134 that included rape, gross sexual imposition, and sexual battery.  These offenses were alleged to have been committed against his biological

daughter, S.D., from the ages of four to twelve years old. Later in December 2018, appellant was indicted by the Warren County Grand Jury on two additional counts of gross sexual imposition, in Case No. 18CR35021, alleged to have been committed against his younger biological daughter, A.D, when she was nine years old.

{¶3} Appellant entered a not guilty plea to both indictments and the matters were set for trial.[1] During the pendency of the cases, appellant filed multiple pretrial motions. First, appellant moved to compel discovery from the prosecution. Second, appellant moved to disclose an in chambers interview with the victims conducted by the Clark County Domestic Relations Court on a parental visitation matter. Third, appellant moved to disclose records from the Clark County Children Services Agency. The trial court granted appellant's motion to compel discovery from the prosecution but denied both the motions for disclosure of the court's and children services' records. The trial court denied these motions without conducting an in camera review of the requested records. Appellant filed an interlocutory appeal of the denial of the court record. This court dismissed the appeal, holding that the decision did not constitute a final appealable order. *State v. Ruggles*, 12th Dist. Warren No. CA2018-08-083 (Oct. 5, 2018) (Entry of Dismissal) ("*Ruggles I*").

{¶4} The cases proceeded to a jury trial in March 2019.[2] At trial, the prosecution called four witnesses to testify: S.D., who was 19 years old at the time of the trial; A.D., who was 16 years old at the time of trial; the investigating officer from the Warren County Sheriff's Office; and the social worker from CARE House who conducted several forensic interviews with the victims. In addition to the witnesses, the prosecution introduced into

---

1. The court consolidated the two cases for trial.

2. Before trial, the trial court granted a nolle prosequi to four of the charges in Case No. 17CR33134.

evidence photographs of S.D. for the relevant time in her life, photographs of the various residences, and photographs of scars from an alleged injury. The defense called one witness to testify, appellant's wife, and had family photographs admitted into evidence.

{¶5} At the conclusion of the trial, in Case No. 17CR33134, the jury found appellant guilty of three counts of rape, each a first-degree felony; five counts of gross sexual imposition, each a third-degree felony; and two counts of sexual battery, both third-degree felonies. In Case No. 18CR35021, the jury found appellant guilty of one count of gross sexual imposition, a third-degree felony. The jury acquitted appellant of three counts of rape against S.D. and one count of gross sexual imposition against A.D.

{¶6} At the sentencing hearing, the trial court determined that several of the offenses in Case No. 17CR33134 were allied offenses of similar import and merged them together. Accordingly, appellant was sentenced on two counts of rape and two counts of gross sexual imposition with the sentences to run concurrently to each other for a total indefinite term of 15 years to life in prison with the possibility of parole after a mandatory 15 years. In Case No. 18CR35021, appellant was sentenced to 60 months in prison. The trial court ordered the sentences to run consecutively for an aggregate 20 years to life term of imprisonment.

{¶7} Appellant now appeals, raising seven assignments of error for review. For ease of analysis we will discuss the assignments of error out of order and have combined similar assigned errors.

{¶8} Assignment of Error No. 4:

{¶9} THE TRIAL COURT'S RULING DENYING MR. RUGGLES' MOTION FOR ORDER TO PRODUCE THE CLARK COUNTY DOMESTIC RELATIONS COURT'S 2012

IN-CAMERA INTERVIEWS OF S.D. AND A.D. DENIED MR. RUGGLES HIS SIXTH AMENDMENT RIGHT TO CONFRONT THE WITNESSES AGAINST HIM AND HIS FOURTEENTH AMENDMENT RIGHT TO DUE PROCESS OF THE LAW.

{¶10} In his fourth assignment of error, appellant argues that the trial court violated his constitutional rights under the Confrontation and Due Process Clauses when it denied his motion for an order to produce the Clark County Domestic Relations Court's 2012 in camera interview of S.D. and A.D.[3] Specifically, appellant contends that the interviews contain evidence material to his defense that is potentially exculpatory as the interviews were conducted on August 14, 2012, during the time frame some of the offenses alleged in the indictment were said to occur, i.e. from July 2003 through September 2012.

{¶11} Appellant and the victims' mother divorced, and appellant was awarded regular parenting time. The interviews in question took place in 2012, after the victims' mother filed a postdecree motion in the Clark County Domestic Relations Court seeking to modify appellant's parenting time based on allegations that appellant was exhibiting bizarre behavior that caused mental and emotional abuse to the children. As part of the post-decree proceedings, the Clark County Domestic Relations Court interviewed S.D. and A.D. in camera on August 14, 2012.[4]

{¶12} Appellant's trial counsel attempted to obtain a copy of the in camera interviews directly from the Clark County Domestic Relations Court. Counsel left a voice message for the Clark County Domestic Relations judge on July 19, 2018, to inquire about obtaining

---

3. We note that appellant did not appeal the trial court's decision denying disclosure of the Clark County children services records.

4. Appellant entered into an agreement to voluntarily forfeit his parenting time with S.D. and A.D. in exchange for a termination of his child support obligation. Therefore, since August 2012, appellant has had almost no contact with the children.

copies of the interviews as part of appellant's pending criminal charges. Counsel represented that the interviews were being requested because they were relevant to his criminal case and contained potentially exculpatory evidence. The day after counsel requested the information, counsel was informed by the Clark County Domestic Relations Court judge that he was not entitled to the interviews and the interviews would not be disclosed.

{¶13} As a result, appellant filed a "Motion for an Order to Produce the In-Camera Interviews" in the instant case. The trial court ruled upon appellant's motion without obtaining or reviewing the interview record. The trial court denied appellant's motion relying solely on this court's decision in *Willis v. Willis*, 149 Ohio App.3d 50, 2002-Ohio-3716 (12th Dist.), wherein this court held that "interviews of children conducted under R.C. 3109.051 are confidential and are not to be disclosed to the parents." *Id.* at ¶ 27. As indicated previously, appellant filed an interlocutory appeal based on this denial. The prosecutor moved to dismiss the appeal, asserting that the trial court's decision did not constitute a final appealable order. We agreed with the prosecutor's position and granted the motion to dismiss in *Ruggles I*. The matter returned to the trial court and proceeded to trial.

{¶14} Following appellant's conviction, a final appealable order was issued. In the instant appeal, appellant again challenges the trial court's denial of his pretrial motion to obtain the in camera interview records from the Clark County Domestic Relations Court. Appellant contends that in these interviews neither child alleged that sexual abuse occurred and that these interviews are, therefore, inconsistent with the accusations S.D. and A.D. later made during forensic interviews with investigators. Appellant further asserts that the trial court had other options to protect sensitive information instead of an outright denial.

- 5 -

The trial court should have balanced appellant's right to exculpatory evidence with the need to protect against disclosure of privileged and confidential information by either designating the records "for counsel only" or conducting an in camera review.

{¶15} This situation and legal arguments presented are similar to those found in the landmark case of *Pennsylvania v. Ritchie*, 480 U.S. 39, 107 S.Ct. 989 (1987). In *Ritchie*, the defendant was convicted of committing sexual offenses against his daughter. *Id*. at 43-45. Before trial, the defendant subpoenaed records of past and current abuse from the local child protective service agency that interviewed his daughter. The agency refused to disclose the records, claiming the records were confidential under Pennsylvania law and the defendant's request did not fall within any of the statutory exceptions. The defendant moved the trial court to sanction the child protective service agency for failing to honor his subpoena. The defendant asserted that "he was entitled to the information because the file might contain the names of favorable witnesses, as well as other, unspecified exculpatory evidence." *Id.* at 44. After a hearing in chambers, the trial court, without examining the agency's entire records, denied the defendant's motion and refused to order the agency to disclose the records.

{¶16} On appeal, the defendant argued, in part, that the failure to disclose the contents of the agency's file violated his confrontation rights under the Sixth Amendment, as applied to the states pursuant to the Due Process Clause of the Fourteenth Amendment. The state intermediate appellate court held that the defendant's constitutional rights were violated and that he was entitled to limited disclosure. *Id*. at 45-46. That court remanded the matter for the trial court to conduct an in camera examination of the records but only for statements made by the victim. The state appealed to the Pennsylvania Supreme Court,

which affirmed the intermediate court, holding that there was a constitutional violation which required remand to determine whether a new trial was necessary. The Pennsylvania Supreme Court also expanded the scope of the review, holding that the defendant's counsel was entitled to examine the entire record to search for any useful evidence. *Id.* at 46.

{¶17} The United States Supreme Court granted certiorari to hear the matter and addressed the competing constitutional arguments involving the confrontation clause and the due process clause. As to the confrontation clause, the defendant argued that by "denying him access to the information necessary to prepare his defense, the trial court interfered with his right of cross-examination." *Id.* at 51. Thus, according to the defendant, the failure to disclose information that could "have made cross-examination more effective undermines the Confrontation Clause's purpose of increasing the accuracy of the truth-finding process at trial." *Id.* at 52.

{¶18} The Court disagreed with the defendant's arguments, explaining as follows:

> The opinions of this Court show that the right to confrontation is a *trial* right, designed to prevent improper restrictions on the types of questions that defense counsel may ask during cross-examination. *See California v. Green*, 399 U.S. 149, 157 (1970) ("[It] is this literal right to 'confront' the witness at the time of trial that forms the core of the values furthered by the Confrontation Clause"); *Barber v. Page*, 390 U.S. 719, 725 (1968) ("The right to confrontation is basically a trial right"). The ability to question adverse witnesses, however, does not include the power to require the pretrial disclosure of any and all information that might be useful in contradicting unfavorable testimony. Normally the right to confront one's accusers is satisfied if defense counsel receives wide latitude at trial to question witnesses. *Delaware v. Fensterer*, 474 U.S., at 20. In short, the Confrontation Clause only guarantees "an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Id.*, at 20 (emphasis in original). See also *Ohio v. Roberts, supra*, at 73, n. 12 (except in "extraordinary cases, no inquiry into 'effectiveness' [of cross-examination] is required").

- 7 -

(Emphasis sic.) *Id.* at 52-53. Accordingly, the right to confrontation is a right to be exercised at trial and not a pretrial discovery mechanism. *Id.*; *see also State v. Wickline*, 50 Ohio St.3d 114, 118 (1990).

{¶19} In the case at bar, appellant only assigns as error the trial court's *pretrial* discovery decision. Therefore, this matter does not fall within the scope of the confrontation clause because the Confrontation Clause does not serve as a discovery device. Moreover, appellant had the opportunity to cross-examine the victims about the 2012 in camera interviews, without any objection by the prosecutor or limitation by the trial court. Thus, his right to effective cross-examination was not violated. Appellant's argument that his Sixth Amendment confrontation rights were violated are, therefore, overruled.

{¶20} However, in *Ritchie*, the Court also addressed a criminal defendant's right under the Due Process Clause of the Fourteenth Amendment to discover the identity of witnesses or to require the government to produce exculpatory evidence. The Court held that a defendant's right to a fair trial may overcome the government's interest in maintaining confidentiality in its records when there is no express government policy prohibiting that disclosure. *Ritchie*, 480 U.S. 39, 57-58, 107 S.Ct. 989. A defendant is entitled to have a state agency's files reviewed to determine whether they contained information that probably would have changed the outcome of his trial, i.e. the evidence is material. *Id.* at 58. However, the Court refused to provide a defendant with unrestricted access, even through his attorney. The proper balance between the government's interest in confidentiality and a defendant's right to a fair trial is one in which the trial court conducts an in camera review of the records to determine whether they contain information material to the defendant's guilt or punishment. *Id.* at 61. After conducting the review, the trial court must disclose the

records if it determines that they are material. *Id.* at 58.

{¶21} Evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the trial would have been different. *State v. LaMar,* 95 Ohio St.3d 181, 2002-Ohio-2128, ¶ 27, citing *Kyles v. Whitley*, 514 U.S. 419, 433-434, 115 S.Ct. 1555 (1995). A reasonable probability is a probability sufficient to undermine confidence in the outcome of the trial. *State v. Johnston*, 39 Ohio St.3d 48 (1988), paragraph five of the syllabus. The "mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense." *United States v. Agurs*, 427 U.S. 97, 109-110, 96 S.Ct. 2392 (1976). Indeed, "undisclosed evidence is not material simply because it may have helped the defendant to prepare for trial." *State v. Brown*, 115 Ohio St.3d 55, 2007-Ohio-4837, ¶ 49.

{¶22} The Ohio Supreme Court has explained that a "'*specific* request will sometimes require the trial court to review the contested matter *in camera* to determine whether it is material or exculpatory despite representations to the contrary by the prosecutor.'" (Emphasis sic.) *State v. Sanders*, 92 Ohio St.3d 245, 262 (2001), quoting *State v. Lawson*, 64 Ohio St.3d 336, 344 (1992); *accord State v. Darrah*, 12th Dist. Warren No. CA2006-09-109, 2007-Ohio-7080, ¶ 28. This court has addressed *Ritchie* in the context of requesting juvenile records in a civil proceeding. In applying *Ritchie* and Ohio caselaw, this court held that

> [t]he proper procedure for determining the discoverability of confidential juvenile records requires the trial court to conduct an in camera inspection to determine: 1) whether the records are necessary and relevant to the pending action; 2) whether good cause has been shown by the person seeking disclosure; and 3) whether their admission outweighs the confidentiality

considerations set forth in R.C. 5153 and R.C. 2151. *Grantz v. Discovery for Youth*, 12th Dist. Butler Nos. CA2004-09-216 and CA2004-09-217, 2005-Ohio-680, ¶ 19. Good cause may be shown when "'the due process rights of other subjects of the record are implicated[.]'" *Johnson v. Johnson,* 134 Ohio App.3d 579, 583 (3d Dist.1999), quoting 1991 Ohio Atty.Gen.Ops. No. 91-003. Therefore, when a criminal defendant makes a specific request and demonstrates good cause for the disclosure of confidential information, the proper procedure is for the trial court to conduct an in camera review of the records to determine if they contain material evidence.

{¶23} As discussed above, the trial court denied appellant's motion for an order to have the Clark County Domestic Relations Court produce the 2012 in camera interview of S.D. and A.D. solely based on the confidentiality imposed by *Willis*, 149 Ohio App. 3d 50, 2002-Ohio-3716. We must now determine whether the confidentiality imposed by *Willis* was such that it completely bars disclosure to appellant. *Ritchie*, 480 U.S. 39, at 57-58, 107 S.Ct. 989. As set forth below, we conclude that it does not.

{¶24} The statutes that set forth a trial court's authority to conduct in chamber interviews of children during custody or visitation proceedings do not expressly prohibit disclosure of these interviews. R.C. 3109.04(B) and 3109.051(C). Additionally, both statutes allow, in the trial court's discretion, the attorneys of the parents to be present for the interview. Reading *Willis* in conjunction with the statutes, we conclude that the confidentiality imposed by *Willis* is not absolute.[5] By restricting a parent's access to

---

5. Our determination is further guided by a review of other Ohio appellate districts that do not require in chamber interviews to remain strictly confidential. *See Inscoe v. Inscoe*, 121 Ohio App.3d 396, 421 (4th Dist. 1997) (court will not construe the statute to require confidentiality when it does not expressly require it); *see also Chapman v. Chapman*, 2d Dist. Montgomery No. 21652, 2007-Ohio-2968, ¶ 27 (interview record to be confidential but may be disclosed by court order). Additionally, other governmental records involving children

interview records, the *Willis* court sought to encourage a child's candor during an in chambers interview. *Willis*, 149 Ohio App.3d 50, 2002-Ohio-3716 at ¶ 24. This is undoubtably an important interest. While the confidentiality imposed by *Willis* is good law for application in relevant civil proceedings, we hold that it cannot be used to deprive a criminal defendant of his right to material, exculpatory evidence.

{¶25} The proper balance between the government's interest in maintaining confidentiality and a criminal defendant's right to a fair trial is one in which the trial court conducts an in camera review of the records when the defendant makes a specific request and puts forth some showing of good cause. Based on the foregoing, the trial court improperly denied appellant's discovery motion by relying only on *Willis*. The confidentiality requirement established by *Willis* is not an absolute barrier to a criminal defendant's right to a fair trial.

{¶26} While the trial court committed error by denying appellant's motion for production of the Clark County Domestic Relations record, we nevertheless find the error to be harmless. Given the reasons asserted by appellant for his request for the production of the 2012 in camera interviews, as well as the evidence produced at trial and appellant's trial strategy, we find that appellant's right to a fair trial under the due process clause of the Fourteenth Amendment was not violated because he has not demonstrated a reasonable probability that the outcome would have been different.

{¶27} Appellant represented to the trial court in his motion for an order to produce

---

that are classified as confidential by statute have express exceptions to their confidentiality. *See Grantz*, 2005-Ohio-680 at ¶ 19; *accord State ex rel. Clough v. Franklin Cty. Children Servs.*, 144 Ohio St.3d 83, 2015-Ohio-3425, ¶ 24 (confidentiality of a public children services agency's records under R.C. 5153.17 is not absolute).

the Clark County court's in camera interview records that the basis for the motion was as follows:

> [i]t is undersigned counsel's understanding that S.R. and A.R. made statements during the Interviews that relate to dates as alleged in the Indictment in the above-captioned cause. It is also undersigned counsel's understanding that the Interviews likely reference, or fail to reference, similar allegations as contained in the forensic interviews of S.R. and A.R. in the above-captioned cause.[6]

{¶28} There was no indication in the record that S.D. or A.D. mentioned any allegations of sexual abuse during the in camera interviews with the court which discussed only mental and emotional abuse. Appellant, in his response to the motion to dismiss in *Ruggles I*, even admitted that S.D. and A.D. did not mention any allegations of sex abuse while being interviewed by the Clark County Domestic Relations Court. Appellant represented:

> [t]he in-camera interviews of A.R. and S.R. were conducted during the time-frame of the indicted offenses, and focused on the Defendant's treatment of A.R. and S.R., but there was no mention of any abuse of a similar or same nature for which the Defendant was indicted during those proceedings.

{¶29} Appellant's trial strategy was to attack S.D.'s credibility by revealing inconsistencies in her subsequent forensic interviews. In addition, appellant's trial strategy was to show that the failure of S.D. and A.D. to reveal the alleged sex abuse allegations during the 2012 in camera interviews made the allegations suspect. In appellant's opening statement to the jury, he indicated:

> [t]he evidence is going to show that the allegations not only grew over time, but were inconsistent depending on who the audience was. It wasn't a consistent story. In order to get visitation

---

6. The victims changed their surname after 2012 upon adoption by their stepfather, therefore, S.R. is now S.D. and A.R. is now A.D.

stopped in 2012 there was no allegations of anything that was sexual.

{¶30} At trial, S.D. testified on cross-examination that during the 2012 domestic relations court interview she only discussed the mental and emotional abuse appellant committed, which included disparaging remarks appellant made to her, his statements that he wanted to get rid of her, and allegations of harming the family pets. S.D. also testified that she did not tell her mother or stepfather about the sexual offenses until August 2016, well after the domestic relations court interview. S.D.'s reluctance to divulge her victimization is further demonstrated in that she did not reveal several of the sexual offenses perpetrated against her during the initial forensic interview with investigators. Rather, as S.D. explained at trial, she waited to reveal the extent of appellant's sexual abuse until additional forensic interviews were held. When cross-examining S.D., appellant did not question S.D. as to whether she had divulged the sexual abuse by appellant to the domestic relations court in 2012. Rather, appellant's trial strategy was to assert that no allegations were made at that time as a means of challenging the legitimacy of the victim's sex abuse allegations.

{¶31} This present case is similar to our decision in *Darrah*, *supra*, wherein this court held that appellant's right to due process had not been violated when the prosecutor did not disclose a recording of the victim's interview with a social worker because the requested record would have only provided evidence that was consistent with the other evidence admitted at trial. *Darrah*, 2007-Ohio-7080 at ¶ 30.[7] Therefore, in *Darrah*, we determined

---

7. This court granted an application to reopen Darrah's appeal on other grounds, but this court again affirmed the conviction. *State v. Darrah*, 12th Dist. Warren No. CA2006-09-109, 2008-Ohio-6762. Darrah appealed that decision and the Ohio Supreme Court did not accept the discretionary appeal. *State v. Darrah*, 121 Ohio St.3d 1501, 2009-Ohio-2511.

that the requested record was not material to the defendant's defense. *Id.*; *See also State v. Wainscott*, 12th Dist. Clermont No. CA2015-07-056, 2016-Ohio-1153, ¶ 36-38 (no due process violation where undisclosed evidence was merely cumulative). We likewise find that in the present case, the requested 2012 in camera interview record is not material. Appellant has only argued that the requested records would, at best, provide evidence consistent with the victim's trial testimony; that is, the 2012 record would demonstrate that there had been no discussion or suggestion of appellant perpetrating sexual offenses against S.D. during the domestic relations court's interview. S.D. acknowledged this at trial. The undisclosed interview record, therefore, would not provide material evidence relevant to appellant's defense.

{¶32} Although a specific request for the production of confidential documents will sometimes require the trial court to review the contested matter in camera to determine whether the evidence is material or exculpatory, we find that, based upon the record before us, this is one of those times that production of the record for an in camera review was not warranted. The nondisclosure of the requested records does not undermine confidence in the verdict as the evidence requested, if disclosed, would not have caused the result of the proceeding to have been different. As appellant has failed to show that the requested records were material to his guilt or punishment, we find no merit to his arguments.

{¶33} Appellant's fourth assignment of error is, therefore, overruled.

{¶34} Assignment of Error No. 1:

{¶35} THE TRIAL COURT VIOLATED MR RUGGLES' CONSTITUTIONAL RIGHT TO THE PRESUMPTION OF INNOCENCE, WITH NO DUTY TO PRESENT EVIDENCE.

{¶36} In his first assignment of error, appellant argues that the trial court erred by

- 14 -

making improper statements during jury selection, thereby depriving him of a fair trial. Specifically, appellant points to several of the judge's statements to the venire such as "if a person's accused of something, they really can't prove—they can't deliver proof that something did not happen, proving a negative" and "there's two sides to everything" to demonstrate that the trial court compromised appellant's right to a fair trial because it infringed on his presumption of innocence and right to remain silent.

{¶37} Appellant did not object to the trial court's statements, therefore, he has waived all but plain error review. *State v. Bryan*, 101 Ohio St.3d 272, 2004-Ohio-971, ¶ 201. An appellate court will take notice of plain error with "utmost caution, under exceptional circumstances, and only to prevent a manifest miscarriage of justice." *State v. Baldev*, 12th Dist. Butler No. CA2004-05-106, 2005-Ohio-2369, ¶ 12. To constitute plain error there must be an obvious deviation from a legal rule that affected appellant's substantial rights, that is, the error must have affected the outcome of the trial. *State v. Barnes*, 94 Ohio St.3d 21, 27 (2002).

{¶38} Pursuant to Crim.R. 30(B),

> at the commencement and during the course of the trial, the court may give the jury cautionary and other instructions of law relating to trial procedure, credibility and weight of the evidence, and the duty and function of the jury and may acquaint the jury generally with the nature of the case.

In determining whether the trial court erred giving instructions during jury selection voir dire, the reviewing court must look at the entirety of the instructions and consider the instructions in their full context. *State v. Brown*, 12th Dist. Butler No. CA2011-11-207, 2013-Ohio-1610, ¶ 43. The Ohio Supreme Court has explained that a trial court's "shorthand references to legal concepts" during voir dire cannot be equated to the final instructions given before final

- 15 -

deliberation. *See State v. Stallings*, 89 Ohio St.3d 280, 285 (2000) (finding no plain error with the trial court's imprecise explanation of death penalty aggravating and mitigating factors at voir dire).

{¶39} Here, the trial court instructed the venire on the requisite burden of proof for a criminal trial, i.e. proof beyond a reasonable doubt, and that it was the prosecution that bore that burden of proof at trial. Next, the trial court cautioned the venire not to consider appellant's decision to remain silent. Specifically, the trial court stated

> And if the defense elects not to have the defendant testify, you cannot consider that for any purpose. Now, that goes against your normal rules of life. Usually, when you're asked to really make a determination, you want all the facts. There's a natural human tendency to say, well, I want this explanation. I want to hear an explanation of what happened here. But you can't do that, you have to put that aside.
>
> I'll be telling you to put things aside probably several times throughout the trial. And you have to make a conscious effort to do that.
>
> The other thing I want to address is when I mentioned there's two sides to everything, but the question is how is that addressed? You know, how are the two sides presented? So it doesn't necessarily have to be from the testimony of the person who's accused in this case. But whatever it is, the state goes first. Generally, as human beings we have a tendency to believe what we hear first. And that's just a fact.
>
> In this case you have to make sure that you wait until you've heard all of the evidence in the case before you start drawing conclusions and forming opinions in this case. If you were accused of something and you couldn't do anything about it, you couldn't say anything about it until the very end, you wouldn't want somebody making up their mind before they heard everything, would you? Of course not. You'd want your chance. So you have to wait until you hear all of the evidence.

{¶40} In reviewing the statements complained of in the context of the entire voir dire instructions and the trial, we find no error, much less plain error. The trial court did not

misstate the burden of proof or appellant's right to remain silent at trial. The trial court's statements did not set an expectation that appellant had to prove his innocence by presenting a defense. This is evident from the trial court's thorough explanation of the burden of proof, appellant's presumption of innocence, and appellant's right not to testify. By describing the "two sides" and inability to prove a negative, the trial court was merely preparing the veniremen for the trial process by using common terminology to explain the legal concepts.

{¶41} Moreover, appellant has not demonstrated how the trial court's statements affected his substantial rights. The trial court properly instructed the jury on the burden of proof, presumption of innocence, and appellant's right to remain silent at the final jury charge. *State v. Murphy*, 12th Dist. Butler No. CA2007-03-073, 2008-Ohio-3382, ¶ 18-23 (no substantial rights affected by jury selection instructions because the final jury instructions were proper).

{¶42} Accordingly, appellant's first assignment of error is overruled.

{¶43} Assignment of Error No. 2:

{¶44} THE STATE COMMITTED PROSECUTORIAL MISCONDUCT DURING VOIR DIRE, THEREBY VIOLATING MR. RUGGLES' CONSTITUTIONAL RIGHT TO A FAIR TRIAL, AS GUARANTEED BY THE DUE PROCESS CLAUSE

{¶45} In his second assignment of error, appellant argues that the prosecutor made improper statements during jury selection and thereby deprived him of a fair trial. Appellant identifies three different statements regarding the prosecutor's personal professional experience in sexual offense cases, his description of post-traumatic stress disorder, and his explanation of the "one witness rule"—that the testimony of one witness, if believed, is

sufficient basis to prove a fact of consequence—to argue that the prosecution both misstated the burden of proof and presented the venire with expert opinion evidence not adduced at trial.

{¶46} The United States Supreme Court has explained that "a prosecutor's improper comments will be held to violate the Constitution only if they 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Parker v. Matthews*, 567 U.S. 37, 45, 132 S.Ct. 2148 (2012), quoting *Darden v. Wainwright*, 477 U.S. 168, 181, 106 S.Ct. 2464 (1986). Therefore, the reviewing court must consider two factors: (1) whether the prosecutor's conduct was improper and, if so, (2) whether it prejudicially affected the defendant's substantial rights. *State v. Belton*, 149 Ohio St.3d 165, 2016-Ohio-1581, ¶ 125. The "touchstone" of this analysis is on the fairness of the trial and not the culpability of the prosecutor. *State v. Hill*, 75 Ohio St.3d 195, 203 (1996). The evaluation of prejudice is considered within the context of the entire trial. *State v. Wilks*, 154 Ohio St.3d 359, 2018-Ohio-1562, ¶ 172.

{¶47} Appellant did not object to the prosecutor's statements at trial, therefore he has waived all but a plain error review. *State v. Gray*, 12th Dist. Butler No. CA2011-09-176, 2012-Ohio-4769, ¶ 58. Therefore, the error must have been obvious and affected the outcome of the trial. *Barnes*, 94 Ohio St.3d at 27. An appellate court may find plain error from prosecutorial misconduct if it is clear the defendant would not have been convicted in the absence of the improper comments. *State v. Olvera-Guillen*, 12th Dist. Butler No. CA2007-05-118, 2008-Ohio-5416, ¶ 36.

{¶48} "[R]easonable latitude must be given to counsel on the voir dire examination." *Krupp v. Poor*, 24 Ohio St.2d 123, 126 (1970); *accord* R.C. 2945.27. This is because the

questions asked during voir dire "must be sufficient to identify prospective jurors who hold views that would prevent or substantially impair them from performing the duties required of jurors." *State v. Jackson*, 107 Ohio St.3d 53, 2005-Ohio-5981, ¶ 57. Nevertheless, "[i]t is improper for an attorney to express his personal belief or opinion as to the credibility of a witness or as to the guilt of the accused." *State v. Smith*, 14 Ohio St.3d 13, 14 (1984). It is also improper for an attorney to vouch for the evidence by implying knowledge of facts outside the record or placing his or her personal credibility in issue. *State v. Cappadonia,* 12th Dist. Warren No. CA2008-11-138, 2010-Ohio-494, ¶ 48, citing *State v. Davis*, 116 Ohio St.3d 404, 2008-Ohio-2, ¶ 232.

{¶49} During jury selection, the prosecutor told the venire:

> Now, my experience, you know, professional experience in this area when I give discussions, when I go out to the community to talk about sexual abuse with the community is that most people have that discussion about stranger danger, right? They have that discussion of, you know, if there's some creepy guy in a van offering you candy, you know, run back to the house and tell me, right?
>
> I can tell you in 20 years doing this, I've never had the creepy guy in the van. Almost all of my cases involve a person that the child knows, right? And that's the reality of sexual abuse. It's either a family member or a close person to the family, right?

Appellee argues that this statement was made in order to ferret out any possible bias a prospective juror may have against the reality that a parent could sexually abuse his or her child. However, this statement necessarily introduced the prosecutor's own experiences and essentially vouched for, albeit unintentionally, the charges against appellant. Voir dire should be a neutral search for juror bias and prejudicial preconceived beliefs. This statement was an improper method of determining whether prospective jurors held any preconceived beliefs or bias because it vouched for the prosecution's theory of the case.

{¶50} Nevertheless, after a review of the record, this statement did not so infect the proceeding as to deprive appellant of a fair trial. Nothing in the statement actually accused appellant or showed the prosecutor's personal belief of appellant's guilt. Moreover, this was an isolated comment and "[i]solated comments by a prosecutor are not to be taken out of context and given their most damaging meaning." *State v. Cotton*, 12th Dist. Butler No. CA2003-06-159, 2004-Ohio-4409, ¶ 17. In the context of the entire trial, the jury heard the testimony of both victims and was properly instructed on the law applicable to the case, i.e. that statements by the attorneys were not to be considered as evidence, the burden of proof required to convict appellant, and how to evaluate witness credibility. Ultimately, appellant has not demonstrated that this remark so infected the proceeding that it undermined the fairness of the proceeding. This is evident by the jury acquitting appellant on several of the sexual offense charges. Moreover, there was substantial evidence against appellant to establish the elements of the offenses beyond a reasonable doubt when viewed in the absence of this statement. Therefore, this statement did not prejudice appellant and did not affect appellant's substantial rights.

{¶51} Next, appellant identifies the following statement by the prosecutor as an improper expert opinion regarding mental illness:

> Most of the time people think of [PTSD] in terms of veterans returning from combat. But it really applies to anyone who's experienced sort of an ongoing traumatic experience.

After review of the record, we find that this statement was not improper. The prosecutor used this to develop questions that would identify whether any prospective jurors had an issue believing the testimony of a witness that disclosed his or her own diagnosis of a psychological disorder. Therefore, this statement was appropriate within the context of the

voir dire.

{¶52} Finally, appellant argues that the prosecutor shifted the burden of proof when he explained to the venire at separate times that

> [t]he judge is going to instruct you, one of the instructions you will hear in this case is that the testimony of any one witness that you believe is sufficient to prove the charge. To prove any disputed fact. Are you all willing to follow that instruction that if you believe the statement of one witness, that alone is enough? Are you willing to do that? Okay.

and

> one witness' statement is enough to prove the case if you believe them.

{¶53} While these statements, perhaps, shortcut the standard of proof by leaving out the requirement that all the elements must be proven, even if only by one witness's testimony, we do not find this statement to be improper within the context of voir dire and the entire trial. One witness's testimony is enough to prove a fact of consequence. *See e.g. State v. Dawson*, 5th Dist. Licking No. 2008-CA-122, 2009-Ohio-2331, ¶ 33. In context, this question was used by the prosecutor to inquire whether any prospective jurors would have a problem rendering a verdict if the prosecution's evidence for an element of the crime only came from one witness. This was not an improper line of questioning. Furthermore, the trial court properly instructed the jury at the final charge on the burden of proof and how to weigh the evidence. These statements did not render appellant's trial unfair, nor did they affect his substantial rights.

{¶54} Accordingly, appellant's second assignment of error is overruled.

{¶55} Assignment of Error No. 3:

{¶56} THE CUMULATIVE EFFECT OF DEFENSE COUNSEL'S ERRORS

VIOLATED MR RUGGLES' RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL, AS GUARANTEED BY THE UNITED STATES CONSTITUTION AND THE CONSTITUTION OF THE STATE OF OHIO.

{¶57} In his third assignment of error, appellant argues that his trial counsel provided constitutionally infirm representation because he failed to object to inadmissible evidence. Appellant contends that this failure to object allowed the jury to hear improper expert opinion and "other acts" evidence that prejudiced him. In addition to the individual errors, appellant argues that pursuant to *State v. DeMarco*, 31 Ohio St.3d 191 (1987), the errors cumulatively deprived him of a fair trial.

{¶58} The accused in a criminal proceeding has the right to effective assistance of counsel under both the United States and Ohio Constitutions. Sixth Amendment to the U.S. Constitution; Article I, Section 10 of the Ohio Constitution; *Strickland v. Washington*, 466 U.S. 668, 686, 104 S.Ct. 2052 (1984); *State v. Bell,* 12th Dist. Clermont No. CA2008-05-044, 2009-Ohio-2335, ¶ 38. Appellant bears the burden of proving that his trial counsel was ineffective. *State v. Johnson*, 112 Ohio St.3d 210, 2006-Ohio-6404, ¶ 142. To prevail on an ineffective assistance of counsel claim, appellant must establish that (1) his trial counsel's performance was deficient, that is, it fell below an objective standard of reasonable representation, and (2) he suffered prejudice, that is, there is a reasonable probability the outcome of the proceeding would have been different but for trial counsel's errors. *State v. Taylor*, 12th Dist. Fayette No. CA2018-11-021, 2019-Ohio-3437, ¶ 16, citing *Strickland* at 687-688, and *State v. Mundt*, 115 Ohio St.3d 22, 2007-Ohio-4836, ¶ 62. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Strickland* at 694. On appellate review, "[c]ounsel is strongly presumed to have rendered

adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *State v. Burns*, 12th Dist. Clinton No. CA2013-10-019, 2014-Ohio-4625, ¶ 7.

{¶59} First, appellant argues that he received ineffective assistance of counsel because trial counsel did not object to the victims' testimonies regarding their diagnoses of psychological disorders, the medications they were prescribed to treat those disorders, and how those disorders were diagnosed later in their life after the alleged offenses occurred. Appellant contends that these statements were essentially expert opinion that allowed the prosecution "to show the sexual abuse occurred through the behavioral manifestations" of the victims.

{¶60} Diagnoses from doctors "may only be established through admission of the relevant doctors' records or the sworn testimony of these doctors." *State v. Fleming*, 12th Dist. Butler No. CA2002-11-279, 2003-Ohio-7005, ¶ 33. Nevertheless, here, it was not ineffective for trial counsel to refrain from objecting to this testimony because it was within reasonable trial strategy. The prosecutor elicited this testimony at the beginning of direct examination to show to the jury that the medical diagnoses and prescribed medications had no impact on the victims' ability to remember past facts or understand questions at the trial. As such, the testimony was not used to prove that sexual offenses occurred, but to show that the victims could reliably testify about the offenses. Therefore, it is unlikely that the trial court would have sustained the objection and counsel is not ineffective for failing to raise a meritless objection. *State v. Taylor*, 78 Ohio St.3d 15, 31 (1997). Moreover, the failure to object to these statements was not prejudicial. There is no reasonable probability that, but for this error, the outcome of the trial would have been different, because the psychological

disorders had little bearing on the charged offenses.

{¶61} Second, appellant argues that his trial counsel failed to object to several instances of "prior bad acts" that the victims testified appellant committed. These acts include appellant conducting urinary tract infection ("UTI") examinations on the victims from a young age, disparaging comments about the victims' appearances, violent threats appellant made to the victims when they would visit him, and an event where appellant allegedly killed the family's pet dog and cat in front of S.D. in the basement.

{¶62} Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person to show that he acted in conformity with that character. Evid. R. 404(B); *State v. Hignite,* 12th Dist. Warren No. CA2015-07-063, 2015-Ohio-5204, ¶ 17. However, such evidence may be admissible if it is offered for purposes other than proving character, including, but not limited to, to prove motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. *State v. Williams*, 134 Ohio St.3d 521, 2012-Ohio-5695, ¶ 15-17. To consider the admissibility of other acts, the court must conduct a three-part analysis: (1) determine whether it is relevant to make any fact of consequence to the determination of the action more or less probable than it would be without the evidence; (2) determine if the evidence is used for a legitimate purpose as provided by Evid. R. 404(B); and (3) determine whether the probative value of the evidence is substantially outweighed by the danger of unfair prejudice. *Id.* at ¶ 19-20. After our review of the record, each complained of other act evidence was relevant, was used for a legitimate purpose, and the probative value was not substantially outweighed by the danger of unfair prejudice.

{¶63} The testimony from both victims regarding UTI examinations was used to

demonstrate that appellant prepared the victims for sexual activity by getting them accustomed to appellant looking and touching their genitalia. *State v. Kaaz*, 12th Dist. Clinton No. CA2016-05-010, 2017-Ohio-5669, ¶ 45 ("other acts" of sexualized behavior admissible because it was used to normalize sexual activity in preparation for later sex offenses); *accord State v. Boles*, 12th Dist. Brown No. CA2012-06-012, 2013-Ohio-5202, ¶ 20 (defendant's sexual "grooming" activity admissible). This testimony is therefore relevant to and used for the legitimate purpose of proving appellant's motive and preparation to commit the charged sexual offenses. Moreover, the probative value of this evidence was not outweighed by the danger of unfair prejudice. There was a high probative value in showing appellant's effort to prepare the victims for sexual activity. Consequently, this evidence did not violate Evid. R. 404(B) and the objection would have been meritless. Appellant has failed to demonstrate his trial counsel was deficient.

{¶64} Also, the testimony regarding appellant's disparaging comments, threats of violence, and killing of the family pets, was used for a legitimate purpose and relevant to a fact of consequence—the force used to commit several of the rape offenses against S.D.[8] In a parent-child relationship, there exists a "filial obligation of obedience to a parent," such that "the same degree of force and violence may not be required upon a person of tender years, as would be required were the parties more nearly equal in age, size and strength." *State v. Eskridge*, 38 Ohio St.3d 56 (1988) paragraph one of the syllabus. There is a coercive component inherent in parental authority and the demonstration of psychological, albeit subtle, force is sufficient to prove the force element. *Id.* at 58-59. Evidence of other

8. Appellant was charged with three counts of rape in violation of R.C. 2907.02(A)(2) which requires force or threat of force.

- 25 -

acts is admissible if it is used to prove a specific element of the offense. *See State v. Smith*, 49 Ohio St.3d 137, 139-140 (1990); *accord State v. Roe*, 41 Ohio St.3d 18, 23 (1989) (other acts evidence admissible if, inter alia, it explains the circumstances of the offense or it logically tends to prove an element of the offense). Here, the offenses were alleged to have been committed when the victim was in her tender years. Appellant's disparaging comments, threatening statements, and violence against the family pets demonstrated the coercive parental authority appellant had over the victim and the psychological forces he exerted on her to compel the sexual conduct. There was a high probative value to this evidence and it was not outweighed by the danger of unfair prejudice. Therefore, this evidence did not violate Evid.R. 404(B).

{¶65} Third, appellant argues that his trial counsel was ineffective for failing to object to the testimony of a social worker from CARE House because this testimony improperly bolstered the victims' credibility. Appellant is correct in that, generally, a witness may not give an opinion regarding the veracity of another witness's testimony. *See Cappadonia*, 2010-Ohio-494 at ¶ 36; *See also State v. Boston*, 46 Ohio St.3d 108 (1989), paragraph one of the syllabus, modified on other grounds, *State v. Dever,* 64 Ohio St.3d 401 (1992) (an expert may not testify as to his or her opinion of the veracity of the statements of a child declarant). Contrary to appellant's argument, though, only statements that directly support the veracity of the witness are prohibited. *See Cappadonia*, 2010-Ohio-494 at ¶ 18.

{¶66} Moreover, the Ohio Supreme Court has held that "[a]n expert witness's testimony that the behavior of an alleged child victim of sexual abuse is consistent with behavior observed in sexually abused children is admissible under the Ohio Rules of Evidence." *State v. Stowers*, 81 Ohio St.3d 260, 261 (1998).

{¶67} Here, the social worker testified that she conducted several forensic interviews with the victims as part of the initial investigation into the offenses. The social worker did not directly testify as to the veracity of the victims' statements. She testified about the phenomena of child sexual offense victims revealing offenses perpetrated against them and an explanation of why victims may delay their disclosure. Therefore, we find that the social worker testified in accord with *Stowers.* Consequently, appellant's argument on this issue lacks merit. Counsel is not ineffective for deciding not to raise a meritless objection. *Taylor*, 78 Ohio St.3d at 31.

{¶68} Finally, appellant argues that cumulatively his trial counsel's errors deprived him of a fair trial. "Although violations of the Rules of Evidence during trial, singularly, may not rise to the level of prejudicial error, a conviction will be reversed where the cumulative effect of the errors deprives a defendant of the constitutional right to a fair trial." *State v. DeMarco*, 31 Ohio St.3d 191 (1987), paragraph two of the syllabus. Cumulative error is not applicable here, because we have found no violations of the Rules of Evidence and no error by trial counsel. *See e.g. State v. Barton*, 12th Dist. Warren No. CA2005-03-036, 2007-Ohio-1099, ¶ 186.

{¶69} Accordingly, appellant's third assignment of error is overruled.

{¶70} Assignment of Error No. 5:

{¶71} THE TRIAL COURT VIOLATED MR. RUGGLES' SIXTH AMENDMENT RIGHT TO TESTIFY

{¶72} In his fifth assignment of error, appellant argues that he was denied the right to testify and the trial court erred by not conducting a hearing to determine if he expressly waived his right to testify at trial. In support, appellant points to his statements at the

sentencing hearing that he "wished he could have gotten up there and taken the stand * * *."

{¶73} A criminal defendant has the right to testify in his defense at trial. *Rock v. Arkansas*, 483 U.S. 44, 51-53, 107 S.Ct. 2704 (1987). However, when a defendant decides not to testify, this right does not have to be formally waived and "a trial court is not *required* to conduct an inquiry with the defendant concerning the decision whether to testify in his defense." (Emphasis sic.) *State v. Bey*, 85 Ohio St.3d 487, 499 (1999). This is, because, "[a]lthough the ultimate decision whether to testify rests with the defendant, when a tactical decision is made not to have the defendant testify, the defendant's assent is presumed." *United States v. Webber*, 208 F.3d 545, 551 (6th Cir.2000). Therefore, when the defendant does not testify or notify his counsel of the desire to testify, waiver of the right is presumed. *Id.*; *See also Bey* at 500 (nothing in the record suggests that the defendant wanted to testify or was denied the opportunity to do so); *State v. Adkins,* 144 Ohio App.3d 633, 645 (12th Dist.2001) (despite some outbursts by the defendant during trial, nothing suggested that the defendant wished to be sworn and testify or that he and his attorney disagreed about the trial strategy they pursued).

{¶74} Appellant's statements at the sentencing hearing only express his *regret* in not taking the stand. This is not the same as being denied the right to testify. There is nothing in the trial transcript that signals appellant wanted to testify at trial or that he disagreed with his trial counsel's strategic advice on this matter. Therefore, we presume that appellant waived his right to testify. Furthermore, the trial court did not err when it declined to conduct a sua sponte inquiry into appellant's decision not to testify.

{¶75} Accordingly, appellant's fifth assignment of error is overruled.

{¶76} Assignment of Error No. 6:

{¶77} MR RUGGLES' CONVICTIONS ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND MUST BE VACATED

{¶78} Assignment of Error No. 7:

{¶79} WHERE MR. RUGGLES' CONVICTIONS WERE BASED ON LEGALLY INSUFFICIENT EVIDENCE, MR RUGGLES WAS DENIED DUE PROCESS OF LAW, AS GUARANTEED BY THE FOURTEENTH AMENDMENT TO THE CONSTITUTION OF THE UNITED STATES

{¶80} In appellant's sixth and seventh assignments of error, appellant argues that there was insufficient evidence to convict him and that the guilty verdicts were against the manifest weight of the evidence because there were inconsistencies in the evidence. Appellant, however, has not cited to the record, as required by App.R. 16(A)(7), to support his argument about inconsistent evidence. Nevertheless, we will review the assigned errors on their merits.

{¶81} A sufficiency of the evidence challenge involves the determination of whether the conviction can be supported as a matter of law. *State v. Richardson*, 150 Ohio St. 3d 554, 2016-Ohio-8448, ¶ 13. The standard of review for a sufficiency of the evidence challenge is whether any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Beverly*, 143 Ohio St. 3d 258, 2015-Ohio-219, ¶ 15.

{¶82} A manifest weight of the evidence challenge examines the inclination of the greater amount of credible evidence, at trial, to support one side over the other. *State v. Peyton*, 12th Dist. Butler No. CA2015-06-112, 2017-Ohio-243, ¶ 42. To determine whether

a conviction is against the manifest weight of the evidence, an appellate court reviews the entire record, weighs the evidence and all reasonable inferences, considers the credibility of the witnesses, and must determine whether in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Taylor*, 2019-Ohio-3437 at ¶ 42. An appellate court "must be mindful the trier of fact has the primary role of weighing the evidence and evaluating witness credibility." *State v. Salinger*, 12th Dist. Butler No. CA2014-10-208, 2015-Ohio-2821, ¶ 15, citing *State v. DeHass*, 10 Ohio St.2d 230, 231 (1967). Therefore, an appellate court will overturn a conviction on a manifest weight challenge "only in extraordinary circumstances when the evidence presented at trial weighs heavily in favor of acquittal." *State v. Green*, 12th Dist. Warren No. CA2017-11-161, 2018-Ohio-3991, ¶ 26. Finally, this court has explained that a "determination that a conviction is supported by the manifest weight of the evidence will also be dispositive of the issue of sufficiency." *State v. Jones*, 12th Dist. Butler No. CA2012-03-049, 2013-Ohio-150, ¶ 19.

{¶83} Appellant was convicted of three rape offenses and two sexual battery offenses. Two of the rape offenses were in violation of R.C. 2907.02(A)(1)(b), which provides that

> [n]o person shall engage in sexual conduct with another who is not the spouse of the offender or who is the spouse of the offender but is living separate and apart from the offender, when any of the following applies:
>
> (b) The other person is less than thirteen years of age, whether or not the offender knows the age of the other person.

The other rape offense was in violation of R.C. 2907.02(A)(1)(c), which provides that

> [n]o person shall engage in sexual conduct with another who is not the spouse of the offender or who is the spouse of the

- 30 -

offender but is living separate and apart from the offender, when any of the following applies:

(c) The other person's ability to resist or consent is substantially impaired because of a mental or physical condition or because of advanced age, and the offender knows or has reasonable cause to believe that the other person's ability to resist or consent is substantially impaired because of a mental or physical condition or because of advanced age.

The sexual battery offenses were in violation of R.C. 2907.03(A)(5), which provides that

[n]o person shall engage in sexual conduct with another, not the spouse of the offender, when any of the following apply:

(5) The offender is the other person's natural or adoptive parent, or a stepparent, or guardian, custodian, or person in loco parentis of the other person.

Both the rape and sexual battery offenses required proof of sexual conduct. Sexual conduct is defined in R.C. 2907.01(A) as

vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal opening of another. Penetration, however slight, is sufficient to complete vaginal or anal intercourse.

{¶84} After review of the record, we find that appellant's convictions for the three rape offenses and two sexual battery offenses were not against the manifest weight of the evidence. S.D. testified that appellant was her natural father. S.D. also related that the first rape and sexual battery offense occurred when she was around six to seven years old and visiting appellant at his house in Lebanon, Ohio. She was lying in appellant's bed with him to go to sleep for the night when appellant used his finger to penetrate her vagina. This testimony was sufficient to prove sexual conduct. S.D. then testified the other two rape offenses and sexual battery offense occurred when she was ten to eleven years old and

visiting appellant at his house in Springboro, Ohio. During this visit she fell asleep on the couch in the living room. She briefly woke up and noticed that she was in appellant's bedroom and appellant was digitally penetrating her vagina. She fell asleep again and then woke up finding appellant over top of her inserting his penis into her vagina. Therefore, S.D.'s testimony was again sufficient to prove sexual conduct in this instance.

{¶85} Ultimately, S.D.'s testimony was sufficient to convict appellant and the jury did not clearly lose its way in concluding that appellant was guilty of the rape and sexual battery offenses. A conviction is not against the manifest weight of the evidence simply because the trier of fact believed the prosecution testimony. *State v. Lunsford*, 12th Dist. Brown No. CA2010-10-021, 2011-Ohio-6529, ¶ 17.[9]

{¶86} Next, appellant was convicted of six gross sexual imposition offenses all in violation of R.C. 2907.05(A)(4), which provides:

> [n]o person shall have sexual contact with another, not the spouse of the offender; cause another, not the spouse of the offender, to have sexual contact with the offender; or cause two or more other persons to have sexual contact when any of the following applies:
>
> (4) The other person, or one of the other persons, is less than thirteen years of age, whether or not the offender knows the age of that person.

{¶87} Sexual contact is defined in R.C. 2907.01(B) as

> any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person.

---

9. We also note that there is no requirement in Ohio that a rape offense must be proven by medical evidence. *State v. Boles*, 12th Dist. Brown No. CA2012-06-012, 2013-Ohio-5202, ¶ 40. Furthermore, "sleep" is a mental or physical condition that is sufficient to prove substantial impairment of a victim's ability to resist sexual conduct. *State v. Hines*, 12th Dist. Clermont No. CA2017-06-025, 2018-Ohio-1780, ¶ 20.

In order to prove a purpose for sexual gratification, this court has previously held that sexual arousal or gratification may be "inferred from the type, nature, and circumstances of the contact" and therefore, direct testimony of that element is not required. *State v. Gesell*, 12th Dist. Butler No. CA2005-08-367, 2006-Ohio-3621, ¶ 25.

{¶88} Again, appellant's convictions for gross sexual imposition were not against the manifest weight of the evidence. Five of the six offenses were against S.D. S.D. testified when she was 5-6 years, the first instance of gross sexual imposition occurred when she was visiting appellant in Waynesville, Ohio. When appellant was tucking her into her bed for the night, he put his hands underneath her underwear and rubbed her vagina. The second instance of gross sexual imposition occurred during appellant's commission of the rape in Lebanon, Ohio when she was six to seven years old. During that encounter, appellant made S.D. touch his penis. The third instance of the gross sexual imposition offenses occurred when S.D. was eight to nine years old. S.D. visited appellant at his parents' house. When appellant and S.D. were upstairs away from the rest of the family, appellant rubbed her vaginal area above her clothes. The fourth and fifth occurrence of gross sexual imposition happened during appellant's commission of the rape and sexual battery offenses at the Springboro, Ohio residence when S.D. was ten to eleven years old.

{¶89} A.D. testified that when she was around nine years old, she visited appellant at his house in Mason, Ohio. The rest of the family was upstairs asleep while she was downstairs watching a "Dracula" type movie with appellant. She testified that the movie was not appropriate for her age because it was a "scary" movie with blood and scenes of nudity. Appellant told A.D. to come lay on the couch with him. When she moved closer to him, appellant placed one hand under her shirt to touch her chest and the other hand down

her pants to touch her vaginal area over the underwear.

{¶90} Based on the foregoing evidence, the jury did not clearly lose its way in concluding that appellant was guilty of gross sexual imposition in each of these instances. In each instance, there were circumstances such that the "finder of fact was entitled to conclude that there was no innocent or nonsexual explanation for appellant's conduct." *State v. B.J.T.*, 12th Dist. Warren No. CA2016-12-106, 2017-Ohio-8797, ¶ 34. Our determination that these convictions were not against the manifest weight of the evidence is also dispositive of the sufficiency of the evidence challenge. *Jones*, 2013-Ohio-150 at ¶ 19.

{¶91} Accordingly, appellant's sixth and seventh assignments of error are overruled.

{¶92} Judgment affirmed.

S. POWELL and RINGLAND, JJ., concur.