[Cite as *State v. Long*, 2021-Ohio-3651.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | CASE NO. CA2021-02-014 |
| Appellee, | : | O P I N I O N<br>10/12/2021 |
| | : | |
| - vs - | : | |
| | : | |
| RONALD G. LONG, II, | : | |
| Appellant. | : | |

CRIMINAL APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
Case No. 18 CR 34790

David P. Fornshell, Warren County Prosecuting Attorney, and Kirsten A. Brandt, Assistant Prosecuting Attorney, for appellee.

Young & Caldwell, LLC, and Tyler E. Cantrell, for appellant.

**M. POWELL, P.J.**

{¶ 1} Appellant, Ronald G. Long, appeals a decision of the Warren County Court of Common Pleas dismissing his petition for postconviction relief.

{¶ 2} In 2018, the Warren County Grand Jury indicted Long on one count of rape of a person less than 13 years of age, and three counts of gross sexual imposition. The

charges related to allegations that Long sexually abused A.H., between January 1, 2011, and February 23, 2018. On May 6, 2019, the case proceeded to a three-day jury trial.

{¶ 3} At trial, A.H. testified that Long made sexual contact with her for approximately seven years, starting when she was around five years old. A.H. described Long calling her into his bedroom before school and asking her to cuddle with him. Long would have A.H. lay down next to him on the bed and would massage her buttocks and vaginal area with his hands over and under her panties. In his defense, Long advanced a theory that A.H. made up the allegations to please her father, who wanted custody of A.H. in order to reduce or eliminate his child support payment.

{¶ 4} Long was found guilty of two counts of gross sexual imposition and acquitted of the remaining two charges. The trial court sentenced Long to three years on each of the gross sexual imposition convictions, to run consecutively, for an aggregate six-year prison sentence.

{¶ 5} Long appealed his convictions and sentence, raising five assignments of error. *State v. Long*, 12th Dist. Warren No. CA2019-08-078, 2020-Ohio-2678. Long asserted in his direct appeal that his convictions were against the manifest weight of the evidence and were not supported by sufficient evidence because A.H.'s testimony was inconsistent and lacked credibility. *Id.* at ¶ 13-29. In overruling this assignment of error, we held that by virtue of the verdict, the jury found portions of A.H.'s testimony lacked credibility regarding one count of gross sexual imposition and the rape charge, but that A.H. was credible when she testified about two of the instances of gross sexual imposition. *Id.* at ¶ 28. Thus, although A.H.'s "testimony and interviews exhibited some inconsistencies, the jury was in the best position to judge the credibility of her trial testimony and her explanation for the inconsistencies." *Id.* at ¶ 27.

{¶ 6} Long also claimed in his direct appeal that the trial court erred in failing to seat

a fair jury when it denied his motion to strike a juror for cause; the trial court erred in permitting the state to use a demonstrative exhibit during trial; and that his sentence was excessive. *Id.* at ¶ 6, 32, 42. This court overruled each of Long's assignments of error and affirmed his conviction and sentence on April 27, 2020. *Id.* at ¶ 51. On September 1, 2020, the Ohio Supreme Court declined jurisdiction of Long's discretionary appeal. *State v. Long,* 159 Ohio St.3d 1488, 2020-Ohio-4232.

{¶ 7} On August 12, 2020, Long sought postconviction relief ("PCR petition"), claiming that Lisa Wells, his lead trial counsel, provided ineffective assistance of counsel. Long claimed that Wells failed to investigate witnesses and evidence as suggested by Long's family; failed to retain an expert witness; and failed to attend his sentencing hearing due to her substance abuse and pending criminal charges. Long attached the affidavits of Kristina Long and Mabel Long, two newspaper articles, and additional documentation related to Wells' personal struggles with substance abuse and criminal charges.

{¶ 8} Kristina Long is Long's wife and the mother of A.H. Her affidavit avers that she was involved with the preparation of Long's case and that she observed several items of concern, including Wells joking about her drug abuse. Kristina states that Wells began meeting with her approximately two weeks prior to trial, and that during those meetings Wells' co-counsel and paralegal "had to continually show [Wells] where and what was going on[.]" Kristina avers she informed Wells of additional witnesses and evidence which would have shown many of A.H.'s allegations to be impossible and false, including the production of Long's gym records and testimony from Long's boss and the children's babysitter; however, Wells indicated such evidence was not needed. Kristina further avers Wells did not review the Mayerson video until one week before trial, received a DVD copy of the Mayerson video the day of trial, and failed to call an expert witness, despite the family's willingness to pay for one and their suggestion that one was necessary.

{¶ 9} Regarding Wells' substance abuse, Kristina avers in her affidavit that "[d]uring trial it seemed that Ms. Wells may have been under the influence of substances" and that she discovered after Long's trial that "Wells ha[d] violated her probation due to substance abuse, which appears to have been occurring during the same time as [Long's] trial and the preparation for the same." Kristina further avers that she approached Wells' co-counsel regarding Long's appeal, who "made it clear that if [they] wanted to go against Ms. Wells that he would not file the appeal" and further discouraged Long from raising an ineffective assistance of counsel claim on appeal.

{¶ 10} Mabel Long is Long's mother. Her affidavit is substantially similar to Kristina's and contains several of the same averments. Specifically, Mabel also avers that she was involved in most of the meetings, conversations, and preparation of Long's case, and had similar concerns with Wells' performance. Mabel states she desired to fire Wells at one point, and discussed her concerns with Wells' co-counsel, but was assured that Wells was a "'good attorney' and 'did a great job'" and that "there was nothing to be worried about." Like Kristina, Mabel also avers that Wells began meeting with her approximately two weeks before trial, that Wells' co-counsel and paralegal had to assist her during those meetings, and that Wells declined to consider additional evidence and witnesses as suggested by the family.

{¶ 11} Relating to Long's direct appeal, Mabel avers she requested Wells' co-counsel to file an appeal on the conviction, but co-counsel indicated he would not file the appeal if she "was going to go against Ms. Wells[.]" Mabel states that, after the appeal was filed, she questioned co-counsel about the ineffective assistance of counsel claim "being left out and was told that he must have misunderstood what [they] wanted." Lastly, Mabel's affidavit echoes Kristina's concerns regarding Wells' substance abuse during Long's trial, but further avers that she "truly believe[s] that Ms. Wells was dealing with substance abuse

issues during the pendency of [Long's] case and that it greatly affected the outcome of the same."

{¶ 12} One of the newspaper articles, dated November 7, 2019, details Wells' ongoing criminal charges in Miami County. The article indicates that Wells was charged with felony drug possession and was granted intervention in lieu of conviction ("ILC") in April 2017.[1] By April 2019, Wells had not complied with the terms of her ILC and due to missing a mandatory hearing in July 2019, an arrest warrant was issued. Wells submitted to a drug test in late August 2019 and tested positive for cocaine, marijuana, and oxycodone. In September 2019 Wells was admitted into a substance abuse rehabilitation facility. After her release, she missed an additional hearing, which resulted in her arrest in October 2019. Wells was later sentenced to three years of probation due to the above incidents.[2]

{¶ 13} The second newspaper article, dated August 1, 2019, discusses the events resulting in Wells' criminal charges, as well as her failure to attend the July 2019 hearing and the issuance of an arrest warrant.

{¶ 14} Long also attached several documents from Wells' criminal case in Miami County, including entries revoking Wells' bond; setting a sentencing and show cause hearing; granting a continuance of that hearing; and detailing her community control violations. Long also included an affidavit of Wells, which she submitted to the Ohio Supreme Court in her disciplinary case. In the affidavit, Wells avers she has not engaged in the practice of law since August 1, 2019, and that she complied with the various conditions required by the Court.

---

1. Due to Wells' placement in ILC, she was not suspended from the practice of law at that time.

2. In November 2019, the Miami County Court of Common Pleas determined that Wells had violated the terms of her ILC. The court revoked her ILC and found Wells guilty of four counts of aggravated drug possession. In December 2019, the Ohio Supreme Court confirmed Wells' felony conviction and imposed an interim suspension against Wells' ability to practice law.

{¶ 15} The trial court dismissed the PCR petition without an evidentiary hearing. The trial court initially determined that Long's petition was untimely, as Long filed the petition more than 365 days after the trial transcript was filed. The trial court also determined that, even if the petition was timely, Long's claim of ineffective assistance of counsel was barred by the doctrine of res judicata, because any prejudice created by Wells' alleged substance abuse and criminal issues could have, and should have, been brought to the trial court's attention prior to and during trial, or on direct appeal. Finally, the trial court held that even if res judicata did not bar Long's petition, his ineffective assistance of counsel claim still fails as Kristina's and Mabel's affidavits were not credible, and the petition and its supporting evidence did not set forth sufficient operative facts to establish that Wells' assistance was ineffective.

{¶ 16} Long now appeals, raising three assignments of error for our review. For the ease of review, we will address Long's assignments of error out of order.

{¶ 17} Assignment of Error No. 2:

{¶ 18} THE TRIAL COURT ERRED IN DISMISSING THE DEFENDANT-APPELLANT'S POST-CONVICTION RELIEF PETITION ON THE GROUND THAT IT WAS UNTIMELY.

{¶ 19} In his second assignment of error Long argues the trial court erred in finding his petition was untimely and in dismissing his petition on that basis.

{¶ 20} R.C. 2953.21(A)(1)(a) provides, in pertinent part:

> [a]ny person who has been convicted of a criminal offense * * * and who claims that there was such a denial or infringement of the person's rights as to render the judgment void or voidable under the Ohio Constitution or the Constitution of the United States * * * may file a petition in the court that imposed sentence, stating the grounds for relief relied upon, and asking the court to vacate or set aside the judgment or sentence or to grant other appropriate relief. The petitioner may file a supporting affidavit and other documentary evidence in support of the claim for

relief.

R.C. 2953.21(A)(2) provides that a PCR petition shall be filed no later than 365 days after the date on which the trial transcript is filed in the court of appeals in the direct appeal of the judgment of conviction.

{¶ 21} Here, the record reflects the transcript was filed with this court in Long's direct appeal on August 12, 2019. Long did not file his PCR petition with the trial court until August 12, 2020, one day after the 365-day deadline had passed.[3] On appeal, Long initially argues his petition is timely because he filed the petition on the "one year anniversary of the filing of the transcripts in this matter." However, Ohio law is clear that PCR petitions must be filed within 365 days after the trial transcript is filed in the court of appeals, not on the date's "one year anniversary." R.C. 2953.21(A)(2). As a result, Long's first argument is without merit.

{¶ 22} Next, Long argues there was an error on the online docket of the trial court, which at one point indicated the transcript was filed with this court on August 13, 2019. Long attached to his merit brief two versions of the trial court's online docket in this case, one which notes the transcript was filed on August 13, 2019, and one which notes the transcript was filed on August 12, 2019. According to Long, because the docket at one time reflected the August 13, 2019 date, the trial court erred in concluding his PCR petition was untimely.

{¶ 23} After a review of the record, we reject Long's argument. Long does not dispute that the transcripts were time stamped on August 12, 2019, or that the transcripts were filed on that date.[4] Although we are mindful of the apparent discrepancy between the

---

3. 2020 was a leap year adding an additional day between the filing of the transcript in Long's direct appeal and the filing of his PCR petition.

4. Long does not argue on appeal that he relied upon the incorrect online docket in timing the filing of his PCR petition.

previous online docket notation of August 13, 2019, and the current notation of August 12, 2019, Long did not inquire with the clerk's office regarding the discrepancy, nor did he attempt to obtain an explanation, via an affidavit or otherwise, from the clerk's office regarding the timing or reason for the subsequent date change. The record contains additional documentation evidencing the August 12, 2019 date, including a notarized notice from the official court reporter stating the various transcripts were filed on that date. Under these circumstances, we find the record adequately reflects that the transcripts were filed on August 12, 2019. Consequently, Long was required to file his PCR petition within 365 days of that date, which, as noted above, he failed to do. As such, the trial court did not err in concluding his petition was untimely and dismissing his petition on that basis.

{¶ 24} Long's second assignment of error is overruled.

{¶ 25} Assignment of Error No. 1:

{¶ 26} THE TRIAL COURT ERRED IN OVERRULING DEFENDANT'S POST-CONVICTION RELIEF PETITION AS THE DEFENDANT-APPELLANT'S TRIAL COUNSEL PROVIDED INEFFECTIVE ASSISTANCE OF COUNSEL.

{¶ 27} Assignment of Error No. 3:

{¶ 28} THE TRIAL COURT ERRED IN DENYING DEFENDANT-APPELLANT'S PETITION ON THE GROUND OF RES JUDICATA.

{¶ 29} Because they are interrelated, we will discuss Long's remaining assignments of error together. In his first and third assignments of error, Long argues the trial court abused its discretion in summarily dismissing his PCR petition without a hearing.

{¶ 30} A postconviction proceeding is not an appeal of a criminal conviction, but rather, is a collateral civil attack on a criminal judgment. *State v. Dillingham*, 12th Dist. Butler Nos. CA2012-02-037 and CA2012-02-042, 2012-Ohio-5841, ¶ 8. An evidentiary hearing is not automatically guaranteed each time a defendant files a PCR petition. *State*

- 8 -

*v. Wilson*, 12th Dist. Madison No. CA2013-10-034, 2014-Ohio-2342, ¶ 16. A trial court properly denies a PCR petition without a hearing if the supporting affidavits, the documentary evidence, the files, and the records of the case do not demonstrate that the petitioner set forth sufficient operative facts to establish substantive grounds for relief. *State v. Hicks*, 12th Dist. Butler No. CA2004-07-170, 2005-Ohio-1237, ¶ 9, citing *State v. Calhoun*, 86 Ohio St.3d 279 (1999), paragraph two of the syllabus.

{¶ 31} As noted above, Long supported his PCR petition with affidavits from his wife, Kristina, and his mother, Mabel. The Ohio Supreme Court has stated that in reviewing a PCR petition, "a trial court should give due deference to affidavits sworn to under oath and filed in support of the petition, but may, in the sound exercise of discretion, judge the credibility of the affidavits in determining whether to accept the affidavits as true statements of fact." *Calhoun* at paragraph one of the syllabus. "In determining the credibility of supporting affidavits in postconviction relief proceedings," courts "should consider all relevant factors[,]" including:

> whether the judge reviewing the postconviction relief petition also presided at the trial, (2) whether multiple affidavits contain nearly identical language, or otherwise appear to have been drafted by the same person, (3) whether the affidavits contain or rely on hearsay, (4) whether the affiants are relatives of the petitioner, or otherwise interested in the success of the petitioner's efforts, and (5) whether the affidavits contradict evidence proffered by the defense at trial. Moreover, a trial court may find sworn testimony in an affidavit to be contradicted by evidence in the record by the same witness, or to be internally inconsistent, thereby weakening the credibility of that testimony.

*Id.* at 285.

{¶ 32} Depending on the entire record, one or more of these or other factors may be sufficient to justify the conclusion that an affidavit asserting information outside the record lacks credibility. *Id.* Such a decision is within the discretion of the trial court. *Id.*

{¶ 33} Applying the factors to this case, we find the trial court did not abuse its

discretion in discounting Kristina's and Mabel's affidavits.  First, the record reflects the same judge reviewing the PCR petition in this case also presided over Long's trial.  Additionally, the two affidavits are nearly identical in language and averments and appear to have been drafted by the same person.  The affiants are also Long's close relatives, being his wife and mother, who are clearly interested in the success of Long's PCR efforts.  As noted by the trial court, Kristina has significant interest in Long's success, as she testified at trial in his defense and clearly indicated she did not believe her daughter's allegations against him.  Lastly, many of the averments in the affidavits are summary and conclusory, and do not set forth any basis for the affiants' conclusions.  When considering these factors, the trial court did not abuse its discretion in concluding the affidavits were not credible and declining to accept the affidavits as true statements of fact.

{¶ 34} Turning to the alleged constitutional deficiency underlying Long's PCR petition, Long asserts that he was denied effective assistance of counsel.  To prevail on an ineffective of assistance of counsel claim, an appellant must show (1) a deficiency in his trial counsel's performance, and (2) that there is a reasonable probability that, but for his trial counsel's errors, he would not have been convicted.  *State v. Xie*, 62 Ohio St.3d 521, 524 (1992), citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052 (1984).  A trial counsel's performance will not be deemed deficient unless it fell below an objective standard of reasonableness.  *State v. Mathes*, 12th Dist. Clermont No. CA2013-02-014, 2013-Ohio-4128, ¶ 13.  Thus, there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  *State v. Cunningham*, 12th Dist. Butler No. CA2017-03-034, 2018-Ohio-912, ¶ 25.  Even debatable trial tactics and strategies do not fall outside this wide range of reasonable assistance.  *Id.*  The failure to satisfy either prong of the *Strickland* test is fatal to an ineffective assistance of counsel claim.  *Id.*

{¶ 35} A trial court's decision resolving a postconviction claim of ineffective assistance of counsel "will be upheld absent an abuse of discretion when the trial court's finding is supported by competent and credible evidence." *State v. Widmer*, 12th Dist. Warren No. CA2012-02-008, 2013-Ohio-62, ¶ 133. "The term 'abuse of discretion' connotes more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." *State v. Thornton*, 12th Dist. Clermont No. CA2012-09-063, 2013-Ohio-2394, ¶ 34.

{¶ 36} Long first claims his counsel was deficient for failing to investigate the witnesses and evidence provided by Long and his family. According to Kristina's and Mabel's affidavits, this evidence includes gym records and potential testimony from Long's boss and the children's babysitter. Long asserts this evidence "might have been helpful to Long's defense," as it could have impeached the testimony of A.H. and corroborated the defense's case.

{¶ 37} As an initial note, Long did not attach any affidavit from the babysitter or his boss to his PCR petition, nor did he include his gym records for the trial court or this court to review. Thus, neither this court nor the trial court can evaluate the importance of this evidence or confirm that such evidence supports what the affiants claim.

{¶ 38} Notwithstanding the above, and despite Wells' alleged decision not to investigate additional evidence as suggested by Mabel and Kristina, the record reflects defense counsel presented similar evidence at trial. Specifically, during cross-examination, A.H. admitted she went to a babysitter in the morning before school while living on Pennyroyal Road. This was corroborated during Kristina's testimony, who indicated A.H. went to a babysitter in the morning before school from February 2014 until February 2016, making it improbable that Long committed the acts against A.H. when she claimed. Kristina further testified Long went to the gym at 5:30 a.m. every morning between January and

August 2015, further calling into question Long's ability to assault A.H. in bed during the morning hours. Consequently, when considering the evidence that was produced via A.H.'s and Kristina's testimonies, even if the evidence Wells elected not to investigate supports what Kristina and Mabel claim, such evidence would have been cumulative at best. Pursuant to Ohio law, "'the failure to put on cumulative evidence is not indicative of ineffective assistance of counsel.'" *State v. Kean*, 10th Dist. Franklin No. 17AP-427, 2019-Ohio-1171, ¶ 98, quoting *State v. Johnson*, 2d Dist. Montgomery No. 16803, 1998 Ohio App. LEXIS 3592 (Aug. 7, 1998).

{¶ 39} Furthermore, Wells' trial performance contradicts Long's claims that she did not adequately investigate this case or sufficiently prepare a defense. Specifically, this case involves incidents that were alleged to have occurred at three different residences, with different family members residing in each home, and over the course of several years. Despite the case's convoluted factual history, Wells demonstrated a thorough knowledge of the family's background, including their employment history, custody schedule, child support obligations, family pets, social media postings, and family members' schedules and routines. Additionally, a review of the transcript indicates Wells thoroughly cross-examined the victim and brought out several specific inconsistencies between her statements during her child-advocacy center ("CAC") interviews, to her school counselor, in her deposition, and what she told her parents. Wells also presented evidence from Long's wife, mother-in-law, and A.H.'s aunt, who each testified that they never saw Long interact inappropriately with A.H. and called into question A.H.'s credibility. As such, there is no evidence in the record to support Long's assertion that Wells was unprepared for trial or failed to adequately investigate his case.

{¶ 40} We also reject Long's claim that Wells' performance was deficient because she failed to obtain or consult with a forensic psychology expert. According to Long, if Wells

had consulted with a forensic psychology expert, she would have learned that many of the questions posed during the CAC interviews of the minor child were inappropriate and violated the Confrontation Clause. However, A.H.'s statements from the CAC interviews were introduced into evidence by Wells during cross-examination of A.H. Using those statements, Wells demonstrated numerous inconsistencies between the details A.H. disclosed during the interviews, the details she disclosed during a subsequent deposition, and the details she testified to at trial. Thus, it is clear Wells' trial strategy was to show that A.H.'s allegations were incredible based upon these inconsistencies. If the CAC interviews were largely discredited and A.H.'s statements were rendered inadmissible via expert testimony, Wells could not have executed that strategy. This court has repeatedly held that trial strategy, even debatable strategy, is not a basis for finding ineffective assistance of counsel. *State v. Woody*, 12th Dist. Clinton No. CA2019-01-001, 2020-Ohio-621, ¶ 10. As such, this court will not second-guess Wells' trial strategy, which we note resulted in Long's acquittal on the most serious charge of rape and one count of gross sexual imposition.

{¶ 41} Moreover, Long's argument that a defense expert was necessary to impeach the opinions and methods of the examiner is purely speculative. Long fails to identify the expert witness who should have been called or what the expert would have said. *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, ¶ 66. As such, this court has no way of knowing how an expert would have aided Long's defense. *State v. Deck*, 12th Dist. Warren CA2020-10-066, 2021-Ohio-3145, ¶ 26.

{¶ 42} We also reject Long's claim that Wells' representation was ineffective because she failed to retain an expert witness to rebut the testimony of the state's experts. It is well settled that declining to call an expert and opting to rely on cross-examination, as Wells opted to do in this case, does not amount to ineffective assistance of counsel. *State v. Myers*, 12th Dist. Warren No. CA2019-07-074, 2021-Ohio-631, ¶ 106, quoting *Hunter* at ¶

66. Further, even if the wisdom of such an approach is debatable, "debatable trial tactics" do not constitute ineffective assistance of counsel. *State v. Clayton*, 62 Ohio St.2d 45, 49, 402 N.E.2d 1189 (1980).

{¶ 43} Lastly, we find no merit to Long's allegation that Wells was ineffective due to her personal legal troubles and substance abuse. In his PCR petition, Long asserts that because the documentation from Long's criminal case indicates Long tested positive for illegal substances in August 2019, it is evident she was using drugs during his trial in May 2019. Long does not offer any evidence that Wells was, in fact, using drugs during her representation of Long, aside from the affidavits of Kristina and Mabel indicating it "appeared" and "seemed" like Wells "may" have been under the influence. These averments are simply unsupported conclusions made without any basis and were properly discounted by the trial court after consideration of the *Calhoun* factors. Furthermore, and as discussed in greater detail above, Wells' trial performance does not reflect that she was impaired during the three-day trial.

{¶ 44} We also find Long cannot establish any prejudice as a result of Wells' alleged drug use. Although Wells did not attend Long's sentencing hearing, Long was represented at the hearing by Wells' co-counsel, who participated in Long's trial. Long claims Wells' co-counsel was unprepared to handle the sentencing hearing and did not offer all mitigating facts to the trial court. After a review of the record, we disagree with Long's characterization of co-counsel's performance at the sentencing hearing. Specifically, co-counsel prepared a sentencing memorandum prior to the hearing, presented several mitigating factors to the trial court, and argued for community control as opposed to prison time. Moreover, the record is devoid of any comments from Long at the sentencing hearing regarding Wells' absence, and Long did not raise any issue related to her absence in his direct appeal. Thus, not only has Long failed to establish any prejudice resulting from Wells' absence, any

argument regarding Wells' failure to attend the sentencing hearing is clearly barred by res judicata. See *State v. Miller*, 12th Dist. Clermont No. CA2016-08-057, 2017-Ohio-2801, ¶ 18, 21 (PCR claim of ineffective assistance of counsel is barred by the doctrine of res judicata where the petitioner could have, and should have, raised the issue on direct appeal).

{¶ 45} In light of the foregoing, we find Long has failed to set forth sufficient operative facts to establish substantive grounds for relief. Therefore, the trial court did not abuse its discretion in summarily dismissing his PCR petition without a hearing.

{¶ 46} Turning to Long's remaining argument that the trial court erred in dismissing his petition on the basis of res judicata, we conclude that any error in the trial court's decision to dismiss Long's PCR petition on the grounds of res judicata is harmless. *See e.g., State v. Moore*, 2d Dist. Clark No. 2007 CA 123, 2008-Ohio-5376, ¶ 12 (the trial court's error in finding an ineffective assistance of counsel claim was barred by res judicata is harmless where the appellant failed to satisfy the substantive requirement of R.C. 2953.21); *State v. Merkle*, 1st Dist. Hamilton Nos. C-020454 and C-030557, 2004-Ohio-1913, ¶ 47-48. Specifically, even if some of the issues raised by Long's PCR petition were not barred by res judicata, he cannot establish any prejudice he suffered as a result of the trial court's res judicata analysis. This is because, as noted above, the trial court properly determined Long failed to demonstrate substantive grounds for relief, which is required under R.C. 2953.21. *Id.*, see also *Hicks*, 2005-Ohio-1237 at ¶ 9. Consequently, even if Long's petition was timely filed, we find the trial court did not abuse its discretion in summarily dismissing the PCR petition without a hearing.

{¶ 47} Finding no merit to any of the arguments raised herein, we overrule Long's first and third assignments of error.

{¶ 48} Judgment affirmed.

S. POWELL and BYRNE, JJ., concur.