[Cite as *State v. Ruggles*, 2022-Ohio-1804.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY


| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NO. CA2021-03-023 |
| | : | O P I N I O N |
| - vs - | | 5/31/2022 |
| | : | |
| ERIC RUGGLES, | : | |
| Appellant. | : | |


CRIMINAL APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
Case Nos. 17CR33134 & 18CR35021


David P. Fornshell, Warren County Prosecuting Attorney, and Kirsten A. Brandt, Assistant Prosecuting Attorney, for appellee.

Stephenie Lape Wolfinbarger, for appellant.



**BYRNE, J.**

{¶ 1} Appellant Eric Ruggles, who was previously convicted of various sexual offenses, appeals a decision of the Warren County Court of Common Pleas dismissing his petition for postconviction relief. For the reasons below, we affirm the trial court's decision.

**I. Facts and Procedural History**

**A. Indictment and Trial**

{¶ 2} Ruggles was previously married to Angela Dom. They had two biological

daughters, Susan and Ashley.[1] Ruggles and Angela divorced. The divorce proceedings were contentious. After the divorce, Ruggles continued to have regular visitation with his daughters until 2012 when a no contact order was put in place.

{¶ 3} In June 2017, a Warren County grand jury indicted Ruggles on 17 sexual offenses in Case No. 17CR33134. Those offenses included rape, gross sexual imposition, and sexual battery, and were alleged to have been committed against Susan from 2003 to 2012, when Susan was four to 12 years old. Later, in December 2018, Ruggles was indicted by the Warren County grand jury in a separate case, Case No. 18CR35021, on two more counts of gross sexual imposition, which were alleged to have been committed between 2010 and 2012 against Ashley, when she was eight to ten years old.

{¶ 4} Ruggles pleaded not guilty to both indictments and the cases were joined for trial. Throughout the cases, Ruggles filed multiple pretrial motions. First, Ruggles moved to compel discovery from the prosecution. Second, Ruggles moved to disclose in camera interviews with Susan and Ashley conducted in 2012 by the Clark County Court of Common Pleas, Domestic Relations Division, on a parental visitation matter. Third, Ruggles moved to disclose records from the Clark County Children Services Agency. The trial court granted Ruggles' motion to compel discovery from the prosecution but denied the motions for disclosure of the court records and the children services records. Ruggles filed an interlocutory appeal of the denial of the court record. We dismissed that appeal for lack of a final appealable order. *State v. Ruggles*, 12th Dist. Warren No. CA2018-08-083 (Oct. 5, 2018) (Entry of Dismissal).

{¶ 5} The cases proceeded to a three-day jury trial in March 2019. At trial, the prosecution called four witnesses to testify: (1) Susan, who was 19 years old at the time of

---

1. To preserve their privacy, and for ease of reading, we refer to Susan and Ashley using fictitious names.

the trial; (2) Ashley, who was 16 years old at the time of trial; (3) the investigating officer from the Warren County Sheriff's Office; and (4) the social worker from CARE House who conducted several forensic interviews with the victims. In addition to the witnesses, the prosecution introduced into evidence various photographs. The defense called one witness to testify—Ruggles' second wife, Janel Ruggles—and had certain family photographs admitted into evidence.

{¶ 6} During trial, Susan and Ashley detailed the sexual offenses committed by Ruggles. Those offenses occurred at several different residences. Susan and Ashley also detailed their eventual disclosures of Ruggles' sexual abuse to their mother (Angela) and their stepfather in 2016 (in Susan's case) and 2018 (in Ashley's case). In his defense, Ruggles claimed the allegations were false and that he had a positive relationship with his daughters. Ruggles attacked the credibility of his daughters by pointing to inconsistencies in Susan's forensic interviews, as well as discrepancies between Susan and Ashley's description of certain events at trial. Ruggles also questioned the legitimacy of the allegations based on his daughters' failures to reveal the sex abuse during the 2012 in camera interviews with the Clark County domestic relations court.

{¶ 7} In Susan's case, the jury found Ruggles guilty of three counts of rape, five counts of gross sexual imposition, and two counts of sexual battery. In Ashley's case, the jury found Ruggles guilty of one count of gross sexual imposition. The jury acquitted Ruggles of three counts of rape against Susan and one count of gross sexual imposition against Ashley. The trial court merged some counts for sentencing purposes and imposed an aggregate prison term of 20 years to life.

**B. Ruggles' Direct Appeal**

{¶ 8} Ruggles appealed his convictions, raising seven assignments of error. *State v. Ruggles*, 12th Dist. Warren Nos. CA2019-05-038 and CA2019-05-044 thru CA2019-05-

046, 2020-Ohio-2886. Ruggles argued in his direct appeal that he received ineffective assistance of counsel based on defense counsel's failure to object to inadmissible evidence, including improper expert opinion and "other acts" evidence that prejudiced him. *Id.* at ¶ 57. Ruggles also argued the trial court erred, and violated his due process rights, when it denied Ruggles' motion seeking the production of the Clark County domestic relations court's 2012 in camera interviews of Susan and Ashley, which, he claimed, contained evidence that was potentially exculpatory. *Id.* at ¶ 10. Ruggles also argued in his direct appeal that the trial court violated his right to the presumption of innocence and his right to testify; that the state committed prosecutorial misconduct during voir dire; and that his convictions were against the manifest weight of the evidence and were based on legally insufficient evidence. *Id.* at ¶ 36, 45, 72, 80.

{¶ 9} On May 11, 2020, this court overruled each of Ruggles' assignments of error and affirmed his convictions. *Id.* at ¶ 92. On November 10, 2020, the Supreme Court of Ohio declined jurisdiction of Ruggles' discretionary appeal. *State v. Ruggles*, 160 Ohio St.3d 1447, 2020-Ohio-5169.

### C. Postconviction Proceedings

{¶ 10} Although Ruggles' direct appeal was ultimately unsuccessful, he pursued another avenue for relief. On October 30, 2020, shortly before the Supreme Court issued its decision declining jurisdiction, Ruggles sought postconviction relief via a petition to vacate or set aside judgment of conviction or sentence pursuant to R.C. 2953.21 ("PCR petition"). In his PCR petition, Ruggles argued that his trial counsel provided ineffective assistance of counsel, violating his rights under the United States Constitution and the Ohio Constitution. Specifically, Ruggles argued that his trial counsel (1) failed to interview, investigate, and subpoena a medical expert, (2) failed to interview, consult, investigate, or subpoena a psychologist expert; (3) failed to seek counseling and medical records; (4) failed

to present impeachment evidence and to provide evidence regarding motive or bias; (5) failed to investigate, interview, and subpoena other witnesses as suggested by Ruggles and his family; and (6) engaged in other cumulative instances of ineffective assistance of counsel.

{¶ 11} In support of his PCR petition, Ruggles attached his own affidavit, as well as the affidavits of eight other individuals. Those affidavits covered the following topics:

- Ruggles described the deficiencies he perceived in his trial counsel's performance. Those perceived deficiencies corresponded to the instances of ineffective assistance of counsel identified in Ruggles' PCR petition.

- Attorney Thomas Eagle described his legal experience, including representing defendants in jury trials involving sex offenses. Eagle averred that after reviewing the case file, he concluded that Ruggles was deprived of effective assistance of counsel in this case. Eagle provided specific examples of purported ineffective assistance by Ruggles' trial counsel, which corresponded to the instances of alleged ineffective assistance of counsel described in Ruggles' PCR petition.

- Ruggles' wife, Janel Ruggles, explained the various ways in which she believed Ruggles' trial counsel provided ineffective assistance. Janel also described an encounter between her, Ruggles, and Susan at Scene 75 in 2015. Although Susan testified at trial that Ruggles was "running around frantically looking for [Susan]," Janel averred that Susan's statement was false, and that counsel failed to question her about Susan's false statement during his direct examination of Janel.

- Janel Ruggles' former supervisor, Vanessa Burgan, averred that Janel, from 2008 to 2019, "never worked the night shifts on the weekend so she could spend time with her family, including her step-children." Burgan also averred that lead trial counsel never contacted her to testify about Janel's shifts.

- Ruggles' cousin, Thomas Kilpatrick, averred he played guitar at Ruggles' home between 2004 and 2005 and never witnessed any misconduct or inappropriate behavior between Ruggles and Susan or Ashley. He also averred that trial counsel never contacted him to testify on Ruggles' behalf.

- A potential expert witness, Dr. Kamala London, described her expert credentials, her knowledge of memory reconstruction and ways in which children's memories can be influenced, and her analysis of Susan and Ashley's failure to initially disclose their sexual abuse by Ruggles, as well as their eventual disclosure of the abuse years later. Dr. London stated that her testimony would help the jury to evaluate the reliability of Susan and Ashley's testimony.

- A potential expert witness, Dr. Pamela Tabor, described her credentials as a forensic nurse. Dr. Tabor concluded that, based on her review of relevant records, "there is no medical evidence specific to sexual abuse to sustain findings of sexual abuse" of Susan and Ashley.

- Ruggles' teenage son, E.R., averred that he never felt unsafe around Ruggles, that the entire family (including Ruggles, Janel, Susan, Ashley, and E.R.) had family time together on the weekends, and that he never witnessed any inappropriate behavior between Ruggles and Susan or Ashley. He also averred that trial counsel did not contact him to testify at trial.

- Gwendolyn Ruggles is Ruggles' mother and Susan's and Ashley's grandmother. She averred that between 2003 and 2004 Ruggles and Janel lived with her, and that when Susan and Ashley visited she never witnessed any inappropriate behavior between Ruggles and his daughters. She also averred that she was subpoenaed before trial, but she was never called or prepared to testify by trial counsel.

{¶ 12} Ruggles also attached the following documents to his PCR petition: two

emails he sent to his trial counsel before trial identifying potential witnesses; the curriculum vitae of Dr. London; the curriculum vitae of Dr. Tabor; the 2012 guardian ad litem report; the CARE House interviews of Susan and Ashley; Dr. Lori Vavul-Roediger's medical examination reports of Susan and Ashley; and a timeline of events prepared by Susan and Ashley's mother, Angela.

## D. Disposition of the PCR Petition

{¶ 13} The state moved to dismiss the PCR petition, or in the alternative, for summary judgment. After a review, the trial court dismissed the PCR petition without an evidentiary hearing. The trial court determined that Ruggles' claim of ineffective assistance of counsel was barred by the doctrine of res judicata, as any claim that Ruggles was prejudiced by his trial counsel's failure to call medical experts and other lay witnesses at trial could have and should have been raised on direct appeal. The trial court also found that even if res judicata did not bar Ruggles' petition, his ineffective assistance of counsel claim still failed as the affidavits attached to his petition were not credible, and the PCR petition and its supporting evidence did not set forth sufficient operative facts to establish that trial counsel's assistance was ineffective. Ruggles appealed.

## II. Law and Analysis

{¶ 14} Ruggles raises two assignments of error for our review. Because they are interrelated, we will address Ruggles' assignments of error together.

{¶ 15} Assignment of Error No. 1:

{¶ 16} MR. RUGGLES' PETITION FOR POST CONVICTION RELIEF WAS NOT BARRED BY RES JUDICATA WHERE THE ARGUMENTS PRESENTED WERE BASED UPON FACTS NOT CONTAINED IN THE TRIAL RECORD AND THUS NOT APPROPRIATE FOR DIRECT APPEAL

{¶ 17} Assignment of Error No. 2:

**{¶ 18}** THE ERRORS OF TRIAL COUNSEL VIOLATED MR. RUGGLES (SIC) SIXTH AMENDMENT RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL AS GUARENTEED (SIC) BY THE CONSTITUTIONS OF THE UNITED STATES AND THE STATE OF OHIO.

### A. Applicable Law and Standard of Review

**{¶ 19}** A postconviction proceeding is not an appeal of a criminal conviction, but rather, is a collateral civil attack on a criminal judgment. *State v. Harris*, 12th Dist. Butler No. CA2019-07-121, 2020-Ohio-4101, ¶ 13; *State v. Calhoun*, 86 Ohio St.3d 279, 281 (1999). Postconviction relief petitions are governed by R.C. 2953.21, which states that

> [a]ny person who has been convicted of a criminal offense or adjudicated a delinquent child and who claims that there was such a denial or infringement of the person's rights as to render the judgment void or voidable under the Ohio Constitution or the Constitution of the United States * * * may file a petition in the court that imposed sentence, stating the grounds for relief relied upon, and asking the court to vacate or set aside the judgment or sentence or to grant other appropriate relief. The petitioner may file a supporting affidavit and other documentary evidence in support of the claim for relief.

R.C. 2953.21(A)(1)(a).

**{¶ 20}** Initial petitions for postconviction relief under R.C. 2953.21 may be resolved in one of three ways. The trial court may (1) summarily dismiss the petition without holding an evidentiary hearing pursuant to R.C. 2953.21(D), (2) grant summary judgment on the petition to either party who moved for summary judgment pursuant to R.C. 2953.21(E), or (3) hold an evidentiary hearing on the issues raised by the petition pursuant to R.C. 2953.21(F). *State v. Statzer*, 12th Dist. Butler No. CA2017-02-022, 2018-Ohio-363, ¶ 12; *State v. McKelton*, 12th Dist. Butler No. CA2015-02-028, 2015-Ohio-4228, ¶ 9.

**{¶ 21}** "An evidentiary hearing is not automatically guaranteed each time a defendant makes a petition for postconviction relief." *State v. Vore*, 12th Dist. Warren Nos.

CA2012-06-049 and CA2012-10-106, 2013-Ohio-1490, ¶ 11. A trial court properly denies a postconviction relief petition without a hearing if the supporting affidavits, the documentary evidence, the files, and the records of the case do not demonstrate that the petitioner set forth sufficient operative facts to establish substantive grounds for relief. *State v. Blankenburg*, 12th Dist. Butler No. CA2012-04-088, 2012-Ohio-6175, ¶ 9; *see also* R.C. 2953.21(D).

{¶ 22} Furthermore, a petition for postconviction relief may be dismissed without an evidentiary hearing when the claims raised are barred by the doctrine of res judicata. *State v. Perry*, 10 Ohio St. 2d 175 (1967). "Under the doctrine of *res judicata*, a final judgment of conviction bars a convicted defendant who was represented by counsel from raising and litigating in any proceeding except an appeal from that judgment, any defense or any claimed lack of due process that was *raised or could have been raised by the defendant at the trial*, which resulted in that judgment of conviction, or on an appeal from that judgment." (Emphasis sic.) *Id.* at paragraph nine of the syllabus. Res judicata bars a petitioner from "re-packaging" evidence or issues that either were or could have been raised in trial or on direct appeal. *State v. Rose*, 12th Dist. Butler No. CA2012-03-050, 2012-Ohio-5957, ¶ 20.

{¶ 23} The presentation of competent, relevant, and material evidence outside the trial record may defeat the application of res judicata. *State v. Lawson*, 103 Ohio App.3d 307, 315 (12th Dist.1995). Where a petitioner argues ineffective assistance of counsel through a postconviction relief petition, the petitioner can avoid the bar of res judicata by submitting evidence outside the record on appeal that demonstrates that the petitioner could not have raised the claim based on information in the original record. *Id.* However, "'[e]vidence presented outside the record must meet some threshold standard of cogency.'" *Statzer*, 2018-Ohio-363 at ¶ 16, quoting *Lawson* at 315. If evidence that did not meet this threshold of cogency were sufficient, a petitioner could overcome res judicata "'by simply

attaching as exhibits evidence which is only marginally significant and does not advance the petitioner's claim beyond mere hypotheses and a desire for further discovery.'" *Lawson* at 315, quoting *State v. Coleman*, 1st Dist. Hamilton No. C-900811, 1993 Ohio App. LEXIS 1485, *21 (Mar. 17, 1993).

{¶ 24} "A trial court's decision resolving a postconviction claim of ineffective assistance of counsel 'will be upheld absent an abuse of discretion when the trial court's finding is supported by competent and credible evidence.'" *State v. Long*, 12th Dist. Warren No. CA2021-02-014, 2021-Ohio-3651, ¶ 35, quoting *State v. Widmer*, 12th Dist. Warren No. CA2012-02-008, 2013-Ohio-62, ¶ 133. "The term 'abuse of discretion' connotes more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." *State v. Thornton*, 12th Dist. Clermont No. CA2012-09-063, 2013-Ohio-2394, ¶ 34.

{¶ 25} Where the basis of a petition for postconviction relief is a claim of ineffective assistance of counsel, the defendant must show that his or her counsel's actions were outside the wide range of professionally competent assistance, and that prejudice resulted by reason of counsel's actions. *State v. Martin*, 12th Dist. Warren Nos. CA2003-06-065 and CA2003-06-066, 2004-Ohio-702, ¶ 12, citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052 (1984). To show prejudice, a defendant must prove there exists "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *State v. Wilson*, 12th Dist. Madison No. CA2013-10-034, 2014-Ohio-2342, ¶ 17, quoting *Strickland* at 694.

**B. Analysis of Ruggles' Substantive Grounds for Relief**

{¶ 26} Ruggles argues the trial court erred in dismissing his PCR petition without an evidentiary hearing. Ruggles claims his PCR petition presented sufficient operative facts supported by evidence outside the record to establish that trial counsel's performance was

deficient, that Ruggles was prejudiced by those errors, and that his claim was not barred by res judicata. We will address Ruggles' arguments in turn.

**1. Failure to Interview, Investigate, or Subpoena a Medical Expert**

{¶ 27} Ruggles made two arguments about medical experts in his PCR petition.

{¶ 28} First, Ruggles argued in his PCR petition that his counsel was deficient for failing to investigate, interview, or subpoena a medical expert. Specifically, he argued that a medical expert could have testified about the lack of physical evidence substantiating Susan's and Ashley's sexual abuse allegations. Ruggles provided the affidavit of Dr. Tabor as an example of the type of medical expert testimony that he believed his counsel should have sought and used to discredit the state's case. According to Ruggles, "medical evidence * * * if presented, would have directly contradicted statements and allegations made by [Susan] at trial and during her [forensic] interview."[2]

{¶ 29} On appeal, Ruggles correctly acknowledges that, in general, "the failure to call an expert and instead rely on cross-examination does not constitute ineffective assistance of counsel." *State v. Cooperstein*, 12th Dist. Warren No. CA2018-09-117, 2019-Ohio-4724, ¶ 27. A trial counsel's decision not to seek expert testimony "is unquestionably tactical because such an expert might uncover evidence that further inculpates the defendant." *State v. Lawrence*, 12th Dist. Butler No. CA2018-11-208, 2019-Ohio-2788, ¶ 19, quoting *State v. Glover*, 12th Dist. Clermont No. CA2001-12-102, 2002-Ohio-6392, ¶ 25. It is well settled that debatable strategic and tactical decisions may not form the basis of a claim for ineffective assistance of counsel, even if a better strategy had been available. *See State v. Phillips*, 74 Ohio St.3d 72, 85 (1995). But, having acknowledged these principles, Ruggles contends it is not reasonable trial strategy to "fail to ever consult with a

---

2. It is unclear why Ruggles only referenced Susan's allegations, and not Ashley's.

separate, independent medical expert, particularly when such action was requested numerous times" and paid for by Ruggles.

{¶ 30} After a review of the record, we find that Ruggles has not established ineffective assistance of counsel based on his counsel's purported failure to consult, interview, investigate, or subpoena an independent medical expert. Ruggles avers in his affidavit that trial counsel "never interviewed" an independent medical witness regarding the lack of physical evidence in this case, but Ruggles fails to provide any basis for his purported knowledge—he simply makes a bare assertion. The record and Ruggles' affidavit do not reflect the extent of trial counsel's pretrial investigation into a medical expert. Where the record on appeal does not indicate the extent of counsel's pretrial investigation, an appellate court "will not 'infer a defense failure to investigate from a silent record.'" *State v. Thompson*, 141 Ohio St. 3d 254, 2014-Ohio-4751, ¶ 247, quoting *State v. Were*, 118 Ohio St.3d 448, 2008-Ohio-2762, ¶ 244. Thus, we cannot infer that Ruggles' trial counsel failed to investigate or consult a medical witness.

{¶ 31} Even if Ruggles' trial counsel failed to consult a medical expert, physical evidence is not required to support a conviction for a sex offense, and the lack of physical evidence does not mean the offense did not occur as testified by a victim. *State v. Wright*, 12th Dist. Fayette No. CA2017-10-021, 2018-Ohio-1982, ¶ 31. Rather, a victim's testimony, if believed, is sufficient to prove sexual conduct, and does not need to be corroborated by physical evidence. *In re B.D.H.*, 12th Dist. Warren No. CA2020-01-001, 2020 Ohio App. LEXIS 3743, *9 (Oct. 13, 2020); *see also State v. Laseur*, 12th Dist. Warren Nos. CA2002-10-117 and CA2002-11-121, 2003-Ohio-3874, ¶ 14. Consequently, if the jury believed Susan's and Ashley's testimonies, any medical expert testimony regarding the lack of physical evidence would not have precluded the jury from finding Ruggles guilty.

{¶ 32} Moreover, although trial counsel elected not to present testimony from a

medical expert, the record indicates he noted to the jury, on several occasions, the lack of physical evidence in this case. Thus, the jury was aware of the lack of physical evidence before finding Ruggles guilty. Dr. Tabor's affidavit merely repeats what the jury already knew.

{¶ 33} Second, Ruggles argues his trial counsel was ineffective because he first "promised the jury" during opening argument that "he would cross examine the State's medical doctor" regarding her report, but then failed to do so. The record reflects defense counsel said the following in his opening statement:

> But the facts are going to show that [Susan] was examined by a medical doctor. That examination took place in September of 2016, some four years after the visitation [with Ruggles] stopped. She's going to testify that there is nothing to back up these claims in the way of physical evidence despite the allegation of vaginal rape, nothing. I actually want you to concentrate on what the doctor says, though. Besides no physical findings, she's going to provide a series of excuses, not proof. At the end of the excuses, however, there's going to be no proof, there are just going to be allegations[.]

{¶ 34} At trial, the state elected not to call Dr. Vavul-Roediger and her report was not introduced or examined. Instead, Jennifer Knisley, the CARE House forensic interviewer, testified regarding the doctor's medical examinations. During closing arguments, Ruggles' trial counsel highlighted to the jury that Dr. Vavul-Roediger did not testify regarding the victims' physical examinations and indicated the reason was due to the lack of physical evidence of rape.

{¶ 35} When considering the above, we conclude Ruggles was not prejudiced by trial counsel's statements or his failure to subpoena Dr. Vavul-Roediger as a witness. First, given the state's subpoena of Dr. Vavul-Roediger, as well as its disclosure of her on the state's witness list, it was reasonable for defense counsel to expect that he would have a chance to cross examine Dr. Vavul-Roediger when the state called her in its case-in-chief.

Upon learning the state did not intend to call Dr. Vavul-Roediger, trial counsel strategically questioned the state's motive in declining to present the doctor's testimony and implied the state did not carry its burden of proof.

{¶ 36} As noted above, we will not second-guess trial counsel's trial strategy, as even debatable strategy is not a basis for finding ineffective assistance of counsel. *State v. Woody*, 12th Dist. Clinton No. CA2019-01-001, 2020-Ohio-621, ¶ 10. This is especially true where, even if Dr. Vavul-Roediger had testified regarding the victims' "normal" physical exams, she could have also testified that such results are common in sexual assault cases, and do not confirm that sexual assault did not occur. *See, e.g.*, *State v. Sheldon*, 12th Dist. Brown No. CA2013-12-018, 2014-Ohio-5488, ¶ 23-25 (finding the jury was free to convict the appellant on five counts of rape despite the "normal" physical examination); *State v. Rosas*, 2d Dist. Montgomery No. 22424, 2009-Ohio-1404, ¶ 6 (Dr. Vavul-Roediger indicated no abnormalities in genital areas and a normal hymen does not necessarily mean that a child was not sexually abused). Thus, contrary to Ruggles' arguments on appeal, when considering the nature of Dr. Vavul-Roediger's report and her potential testimony, Ruggles has failed to establish that trial counsel's decision not to call Dr. Vavul-Roediger was detrimental to Ruggles' case.

{¶ 37} Accordingly, we find that Ruggles failed to set forth sufficient operative facts to establish that trial counsel engaged in ineffective assistance of counsel with respect to his alleged failure to interview, investigate, or subpoena a medical expert.

### 2. Failure to Interview, Investigate, or Subpoena a Psychologist Expert

{¶ 38} Ruggles next argued in his PCR petition that his trial counsel provided ineffective assistance because he failed to interview, investigate, or subpoena a psychologist expert. Ruggles claimed expert psychologist testimony like Dr. London's would have undermined the jury's confidence in a guilty verdict against Ruggles because

the psychologist expert "would have testified at length to the pattern of disclosure displayed by [Ashley] and [Susan]." In other words, Ruggles believes Dr. London or a similar expert would have cast doubt on Ashley and Susan's truthfulness based on their years-delayed reporting of their father's sexual abuse.

{¶ 39} As with his averment regarding his trial counsel's alleged failure to investigate a medical expert, Ruggles failed to provide any basis of knowledge for his assertion in his affidavit that his trial counsel failed to consult a psychologist expert as part of his pretrial investigation. In other words, Ruggles does not provide a cogent basis for concluding that his counsel failed to consult a psychologist expert. *See Thompson*, 2014-Ohio-4751 at ¶ 247. What the record does reflect is that instead of retaining a psychologist expert, Ruggles' trial counsel attacked the evolving, changing nature of the victims' stories through cross-examination. In so doing, trial counsel thoroughly cross-examined Susan and Ashley, exposing that they disclosed emotional, mental, and spiritual abuse but not sexual abuse prior to 2016 and 2018, respectively, and exposing how their stories about Ruggles' behavior towards them changed and evolved from 2012 to 2018. Trial counsel highlighted several inconsistencies between the victims' testimonies at trial and their prior forensic interviews, as well as inconsistencies between each sister's version of events.

{¶ 40} As noted above, it is well settled that declining to call an expert and opting to rely on cross-examination, as trial counsel opted to do in this case, does not amount to ineffective assistance of counsel. *State v. Myers*, 12th Dist. Warren No. CA2019-07-074, 2021-Ohio-631, ¶ 106, quoting *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, ¶ 66. This court will not second-guess trial counsel's trial strategy, which we note resulted in Ruggles' acquittal on three counts of rape against Susan and one count of gross sexual imposition against Ashley

{¶ 41} Nor do we agree that testimony from an expert like Dr. London would have

changed the outcome of this case. In her affidavit, Dr. London initially states it is possible that Susan and Ashley did not report Ruggles' sexual abuse during earlier interviews but felt compelled to disclose the abuse in their forensic interviews several years later. Thus, although Ruggles claims Dr. London's testimony could have undermined the jury's confidence in the verdict, it is also possible that Dr. London's testimony would have solidified to the jury that the victims' disclosures, though delayed, were unaltered and truthful.

{¶ 42} Furthermore, Dr. London's opinion that the victims may have been influenced to reconstruct their memory to fit their negative perception of Ruggles is pure speculation. That is, Dr. London offers no evidentiary basis to support the possibility that Susan and Ashley were influenced before their forensic interviews or by whom. Rather, Dr. London simply assumes outside influence occurred based on the dates when the victims finally disclosed Ruggles' sexual abuse.

{¶ 43} Consequently, and based on the above, we conclude Ruggles failed to set forth sufficient operative facts to establish that trial counsel engaged in ineffective assistance of counsel with respect to his alleged failure to interview, investigate, or subpoena a psychologist expert.

### 3. Failure to Seek Counseling and Medical Records

{¶ 44} Ruggles next argued in his PCR petition that his trial counsel was ineffective because he never investigated or attempted to obtain the victims' counseling records. Ruggles was somewhat vague in identifying these records, but it appears he was referring to records from Susan's counseling sessions in 2012 and any counseling that followed the victims' initial interviews with Knisely. Ruggles claimed Susan's and Ashley's counseling records were "critical" for the jury to assess the reliability and credibility of their testimonies. Ruggles also claimed Susan's and Ashley's counseling records would support Dr. London's testimony regarding the victims' delayed disclosure of Ruggles' sexual abuse and possible

memory reconstruction.

{¶ 45} Yet again, Ruggles fails to identify any basis for his knowledge about the steps his trial counsel took or did not take to obtain the counseling records. The only two documents Ruggles cites in support of this argument—the affidavits of Dr. London and the timeline prepared by Angela Dom—do not provide any other information about trial counsel's purported failure to pursue the counseling records. Ruggles therefore does not provide a cogent basis for concluding that his trial counsel failed to seek Susan's and Ashley's counseling records. On the contrary, the record shows that Ruggles' trial counsel filed a motion to obtain the 2012 in camera interviews and certain records from the Clark County children services agency. Although the trial court denied both requests, and counsel could not obtain the records, such motions are indicative of counsel's pretrial attempts to obtain at least some of the children's records that Ruggles argues trial counsel should have sought.

{¶ 46} We also find that Ruggles' assertion that the victims' counseling records would have had a material effect on the outcome of the trial is purely speculative. Ruggles' trial counsel already cross-examined Susan and Ashley about their changing stories and highlighted those changes to the jury. To the extent Ruggles argues that the counseling records would have further impeached Susan's and Ashley's testimony by supporting the testimony of an expert like Dr. London, Ruggles is simply suggesting a different strategy than the one pursued by his trial counsel. It was not ineffective assistance of counsel to rely on cross-examination instead of retaining an expert witness to impeach Susan and Ashley. *Myers*, 2021-Ohio-631 at ¶ 106.

{¶ 47} Accordingly, because there is no evidence that Ruggles was prejudiced by the absence of the victims' counseling records and because Ruggles has offered no cogent evidence suggesting that his trial counsel's performance in this respect was deficient,

Ruggles has failed to establish that trial counsel engaged in ineffective assistance of counsel regarding the counseling records. *See State v. Fraker*, 3d Dist. Union No. 14-12-19, 2013-Ohio-4561, ¶ 56-58.

### 4. Failure to Present Impeachment Evidence and Provide Motive/Bias

{¶ 48} Ruggles next argued in his PCR petition that his trial counsel was ineffective because he failed to present evidence impeaching Susan with respect to her prior, allegedly unsubstantiated allegations of molestation against Angela's ex-boyfriend, Chad Frank. Ruggles failed to attach to his PCR petition any credible evidence or affidavit signed by Frank regarding the nature of Susan's allegations. Thus, any assertion regarding those allegations, their falsity, and their materiality to Ruggles' convictions is pure speculation. Without knowing the extent and circumstances of the allegations, we cannot infer that any cross-examination of Susan regarding the allegations would have been beneficial to Ruggles or admissible at trial.

{¶ 49} In any event, the record reflects that Ruggles' trial counsel attempted to obtain Susan's children services' file pertaining to her allegations against Frank, but his request was denied by the trial court on the basis of relevance and admissibility under R.C. 2907.02(D), Ohio's rape shield law. Thus, the record shows his counsel did take steps to pursue the evidence Ruggles now complains he did not present.

{¶ 50} Ruggles also argued that his trial counsel failed to question Susan about her failure to disclose Ruggles' abuse of her in the 2012 in camera interview or to her guardian ad litem in 2012. But a review of the transcript here indicates Ruggles' trial counsel did in fact cross-examine Susan about her failure to disclose Ruggles' abuse prior to the forensic interview in 2016. Thus, more specific testimony regarding the 2012 in camera interview or the guardian ad litem report would have been cumulative at best. "The failure to put on cumulative evidence is not indicative of ineffective assistance of counsel." *Long*, 2021-

Ohio-3651 at ¶ 38, citing *State v. Kean*, 10th Dist. Franklin No. 17AP-427, 2019-Ohio-1171, ¶ 98.

{¶ 51} Additionally, any testimony regarding the guardian ad litem report would have highlighted the true nature of Susan's and Ashley's relationship with Ruggles. The report included information about specific allegations of Ruggles' emotional, mental, and spiritual abuse of Susan and Ashley. In light of the report's contents, it was not ineffective for counsel not to question Susan about the report specifically or to admit the report into evidence. Statements about Ruggles' other, non-sexual forms of abuse of Susan and Ashley would have been detrimental to his trial counsel's trial strategy.

{¶ 52} Ruggles also argued that his counsel was ineffective in declining to present evidence of Susan's and Ashley's motive to provide false testimony. Specifically, Ruggles argued that his trial counsel should have questioned the victims' mother, Angela, regarding the possibility that Susan and Ashley alleged sexual abuse (which they had not previously alleged) only in response to Ruggles' intention to challenge the legitimacy of Susan's and Ashley's adoption by their stepfather. We find no merit to this argument because the record indicates both victims offered explanations for their eventual disclosures and neither related to their adoption. As such, when considering the victims' testimonies regarding the reasoning behind their delayed disclosure, testimony concerning Ruggles' desire to contest the adoption would not have established any motive for the children to fabricate the abuse.

{¶ 53} Lastly, Ruggles' argument is undermined by the evidence attached to his PCR petition, including a "timeline of events" prepared by Angela. In the timeline, Angela indicates Ruggles consented to the adoption so long as his child support would stop. Thus, even if trial counsel had called Angela to testify regarding the adoption, her testimony would have, presumably, been consistent with her timeline of events and would not have provided any evidence of the victims' motive as alleged by Ruggles.

{¶ 54} Accordingly, because we find no deficiency in trial counsel's strategy to avoid discussing the adoption proceedings, Susan's prior allegations of sexual abuse by Chad Frank in Clark County, and the nature of the 2012 guardian ad litem report, Ruggles cannot establish a claim of ineffective assistance of counsel on such grounds. That is, Ruggles has failed to provide cogent evidence that his trial counsel's performance in this respect was deficient, and has failed to establish that trial counsel engaged in ineffective assistance of counsel with respect to presenting impeachment evidence and evidence of the victims' motives or biases.

### 5. Failure to Investigate, Interview, or Subpoena Other Witnesses

{¶ 55} Prior to trial, Ruggles sent his counsel emails in which he identified 21 potential witnesses and described their proposed testimony. Ruggles in his PCR petition argued his trial counsel was ineffective because he failed to investigate, contact, interview, prepare, or subpoena 15 of those potential witnesses. Ruggles believes that those witnesses' testimonies would have been beneficial to his defense. In support, Ruggles attached the emails to his trial counsel, as well as the affidavits of four family members whom he had identified as potential witnesses. Each of the affiants indicated they were present in Ruggles' home with the victims during the relevant time period and never observed any inappropriate behavior between Ruggles and Susan or Ashley. Ruggles also attached the affidavit of the former supervisor of Ruggles' wife Janel. The supervisor averred Janel never worked weekend-night shifts, contrary to Susan's testimony.

{¶ 56} The record reflects Ruggles' trial counsel subpoenaed eight of the witnesses identified in Ruggles' emails, as well as additional witnesses not identified by Ruggles. Despite subpoenaing several witnesses, counsel only called Janel, Ruggles' wife, to testify in his case-in-chief. Janel contradicted Susan's testimony on a number of points, including whether Ruggles interacted with Susan when Janel saw Susan at Scene 75. She also

denied engaging in inappropriate behavior with the victims, and denied other events described by Susan during trial. Janel further indicated that she only scheduled visitations with the girls when she would be home, and that she was present every evening that Susan and Ashley were at the home with Ruggles.

{¶ 57} After a review, we find nothing unreasonable or insufficient in counsel's presentation of, and investigation into, his case-in-chief. In general, "counsel's decision whether to call a witness falls within the rubric of trial strategy and will not be second-guessed by a reviewing court." *State v. Treesh*, 90 Ohio St.3d 460, 490 (2001); *State v. Hubbard*, 12th Dist. Butler Nos. CA2006-09-216 and CA2006-00-231, 2007-Ohio-6029, ¶ 29. Here, it was legitimate trial strategy to rely on Janel's testimony in Ruggles' defense. While Ruggles claims additional testimony could have been helpful, the potential testimony recited in his relatives' affidavits is merely cumulative to Janel's testimony and does not prove Ruggles did not abuse the victims as alleged. Specifically, although Ruggles' family members were present in the home at times and did not see any inappropriate behavior between Ruggles and his daughters, such testimony is less persuasive than Janel's testimony that she was present on every occasion the girls were in their home. Also, being Ruggles' wife and the victims' stepmother, Janel likely had the best knowledge of the nature and details of Ruggles' relationship with his daughters. And of course, the fact that certain relatives did not see Ruggles sexually abuse or act inappropriately with Susan and Ashley does not mean that the acts alleged by Susan and Ashley did not occur at other times when those relatives were not present. As a result, it is unlikely the additional cumulative testimony from the proposed witnesses would have changed the outcome of Ruggles' case.

{¶ 58} We likewise conclude that testimony from Janel's former supervisor about Janel's employment schedule was unnecessary. As noted above, Janel's testimony contradicted Susan's testimony that the abuse often occurred when Janel was at work on

the weekends. The jury was free to believe or disbelieve the testimony related to Janel's work schedule. Consequently, while third party corroboration may have been helpful, it was not ineffective for counsel not to present the cumulative testimony of Janel's former supervisor. *Long*, 2021-Ohio-3651 at ¶ 38

{¶ 59} Accordingly, because Ruggles failed to provide cogent evidence suggesting that his trial counsel's performance in this respect was deficient, Ruggles has failed to establish that trial counsel engaged in ineffective assistance of counsel with respect to counsel's investigation, subpoenaing, and interviewing of potential witnesses.

### 6. Cumulative Ineffective Assistance of Counsel

{¶ 60} In his final ground for relief, Ruggles claims his trial counsel was ineffective because he would not allow Ruggles to testify, because he failed to prepare himself or Ruggles for trial, and because he failed to object to the joinder of Susan's and Ashley's cases. Ruggles argues that these deficiencies collectively denied him a fair trial. In support, Ruggles relies on his and Janel's affidavits, as well as the affidavit of attorney Thomas Eagle.

### i. Denial of Right to Testify

{¶ 61} In his direct appeal, Ruggles raised as his sixth assignment of error the argument that his trial counsel was ineffective for denying Ruggles' right to testify at trial. We overruled that assignment because the only evidence in the record regarding this issue was Ruggles' statement at his sentencing hearing that he regretted not testifying. *Ruggles*, 2020-Ohio-2886 at ¶ 74. We noted that there was no evidence in the record that Ruggles wanted to testify at trial or disagreed with his counsel's strategic advice on the matter. *Id.* We therefore "presume[d] that [Ruggles] waived his right to testify" and overruled the assignment of error.

{¶ 62} Ruggles returned to this argument in his PCR petition. But this time, Ruggles

attached an affidavit signed by Janel Ruggles stating, "I heard [Ruggles] tell [his trial counsel] that he wanted to testify, and further, heard [trial counsel's] response that he would not permit [Ruggles] to testify." Ruggles quoted *State v. Fry*, 9th Dist. Summit No. 28907, 2019-Ohio-958, ¶ 24, for the proposition that "[t]he right to testify at one's own criminal trial is rooted in the Due Process Clause of the Fourteenth Amendment, the Compulsory Process Clause of the Sixth Amendment, and the Fifth Amendment's privilege against self-incrimination." *Id.* He also cited *Fry* when noting that "[d]enial of the right to testify is a proper issue that may be raised in a petition for post-conviction relief under R.C. 2953.21(A)(1)(a)." (PCR Petition ¶ 130, quoting *Fry* at ¶ 5-6).

{¶ 63} *Fry*, like this case, involved an appeal of the denial of a PCR petition following the defendant's exhaustion of his unsuccessful direct appeal. In Fry's direct appeal, the Ohio Supreme Court rejected the defendant's claim of ineffective assistance based on counsel's denial of the defendant's request to testify because "[n]othing in the record suggest[ed] that Fry wished to testify but was denied the opportunity to do so." *State v. Fry*, 125 Ohio St. 3d 163, 2010-Ohio-1017, ¶ 119-120. When Fry filed his motion for postconviction relief and renewed the argument, he presented evidence from outside the record. Specifically, Fry presented notes that he claimed were taken by his attorney during an interview of Fry and which indicated that Fry wanted to testify at trial. *Fry*, 2012-Ohio-2602, ¶ 38-39. The Ninth District Court of Appeals held that Fry's ineffective assistance of counsel claim was not barred by res judicata because in his PCR petition he relied on evidence outside the record. The Ninth District therefore held that "[t]he trial court erred when it denied Fry's claim under the doctrine of res judicata and failed to assess the credibility of the evidence presented in his petition." *Id.* at ¶ 38-39. The appeals court remanded for the trial court "to consider the evidence presented as it relates to this claim." *Id.*

{¶ 64} We similarly find that Ruggles' argument regarding the denial of his right to testify at trial was not barred by res judicata, despite our having overruled that argument in his direct appeal, for the same reason that res judicata did not apply in *Fry*. However, we need not remand for the trial court "to consider the evidence presented as it relates to this claim" because the trial court already determined that "the affidavits relied upon by [Ruggles] in his postconviction petition lack credibility."

{¶ 65} A trial court is entrusted to make the determination of whether to accept an affidavit in support of a PCR petition as true. See *State v. Blankenburg*, 12th Dist. Butler No. CA2013-11-197, 2014-Ohio-4621, ¶ 31. "Furthermore, '[t]he trial court may, under appropriate circumstances in postconviction relief proceedings, deem affidavit testimony to lack credibility without first observing or examining the affiant.'" *State v. Miller*, 12th Dist. Butler No. CA2016-01-007, 2016-Ohio-7360, ¶ 11, quoting *Calhoun*, 86 Ohio St.3d at 284. "That conclusion is supported by common sense, the interests of eliminating delay and unnecessary expense, and furthering the expeditious administration of justice." *Id.*

{¶ 66} In determining the credibility, or lack thereof, of affidavits submitted in support of a petition for postconviction relief, a court should consider

> (1) whether the judge reviewing the postconviction relief petition also presided at the trial, (2) whether multiple affidavits contain nearly identical language, or otherwise appear to have been drafted by the same person, (3) whether the affidavits contain or rely on hearsay, (4) whether the affiants are relatives of the petitioner, or otherwise interested in the success of the petitioner's efforts, and (5) whether the affidavits contradict evidence proffered by the defense at trial.

*Calhoun* at 285. "Depending on the entire record, one or more of these factors or other factors may be sufficient to justify the conclusion that an affidavit asserting information outside the record lacks credibility. Such a decision should be within the discretion of the trial court." *Id.* If a trial court discounts the credibility of sworn affidavits, it "should include

an explanation of its basis for doing so in its findings of fact and conclusions of law, in order that meaningful appellate review may occur." *Id.*

{¶ 67} In finding that the affidavits submitted by Ruggles in support of his PCR petition lacked credibility, the trial court noted it presided not only over the review of Ruggles' PCR petition, but also over Ruggles' trial. The trial court stated that the record "shows trial counsel did, in fact, subpoena witnesses [Ruggles] now claims were not subpoenaed and contain allegations that do not align with the testimony of the witnesses who participated at trial." The trial court then concluded that "the affidavits of [Ruggles], his family, and his friends must be weighed cautiously as those individuals have a clear interest in [Ruggles'] success in this petition."

{¶ 68} Based on these facts, we find that the trial court did not abuse its discretion in deciding that Ruggles' and Janel's affidavits lacked credibility. *See Calhoun* at 285. Likewise, and because Ruggles only offered affidavits lacking credibility in support of his claim of ineffective assistance based on his trial counsel's denial of his right to testify at trial, the trial court did not err in rejecting that claim.

### ii. Counsel's Failure to Prepare for Trial

{¶ 69} Ruggles next argued in his PCR petition that trial counsel provided ineffective assistance because he failed to prepare himself for trial and failed to prepare Ruggles for trial. Ruggles again relies on his and Janel's affidavits, as well as the affidavit of attorney Thomas Eagle.

{¶ 70} We find the record contradicts Ruggles' claim that counsel was unprepared for trial. The record demonstrates that trial counsel engaged in ample preparation and discovery before trial, including that he requested and moved to compel discovery from the state, attended hearings, requested modification of Ruggles' bond, subpoenaed several witnesses, filed a request for the victims' forensic interviews, medical and hospital records,

and various audio recordings, moved to produce the 2012 in camera interviews and Susan's case file from Clark County children's services, and filed a petition for habeas corpus and a request for furlough. While some of these requests were denied, a number of them were granted and benefitted Ruggles.

{¶ 71} Counsel also vigorously cross-examined Susan, Ashley, and the forensic interviewer on the stand. During his cross-examination of the victims, trial counsel elicited many inconsistencies between their testimony at trial and their prior interviews, presented evidence of a positive relationship with their father, and questioned their lack of disclosure until several years after the alleged abuse occurred. Trial counsel was knowledgeable of the underlying facts of the case, as well as the family's dynamic and history. As noted previously, trial counsel's strategy resulted in Ruggles' acquittal on several charges, including three charges of rape.

{¶ 72} Moreover, as already described above, the trial court did not err when it found Ruggles' and Janel's affidavits to lack credibility. The trial court, having presided over Ruggles' trial, was certainly in a position to assess Ruggles' claim that his counsel was not prepared for trial.

{¶ 73} Accordingly, we conclude Ruggles has failed provide sufficient cogent and credible evidence to suggest that trial counsel engaged in ineffective assistance of counsel with respect to his preparedness for trial.

### iii. Failure to Object to Joinder

{¶ 74} Ruggles also argued in his PCR petition that Ruggles' trial counsel was ineffective in failing to object to the joinder of Susan's and Ashley's cases or to request a severance. The doctrine of res judicata bars review of this claim. This issue was capable of being raised on direct appeal as a resolution of the issue does not require or involve evidence outside the trial court record. *State v. Hensley*, 12th Dist. Warren No. CA2009-

11-156, 2010-Ohio-3822, ¶ 37-43.

{¶ 75} Even if Ruggles' argument regarding trial counsel's failure to object to consolidation were not barred by res judicata, we would find that Ruggles cannot establish any prejudice from trial counsel's purported failure. Ruggles offers no evidence that such opposition would have changed the outcome of the proceedings, that the joinder of the trials was prejudicial, or that the cases would have remained separate if an objection had been raised. When considering the underlying facts of the charges, we conclude any objection to the consolidation would have been futile. *See* Crim.R. 13; *see also State v. Grubbs*, 5th Dist. Delaware No. 15CAA100080, 2016-Ohio-5147, ¶ 40-57.

{¶ 76} For all the reasons stated above, we find that when considering the supporting affidavits, the documentary evidence, the files, and the records of the case, Ruggles has failed to set forth sufficient operative facts in his PCR petition to establish substantive grounds for relief. Accordingly, the trial court did not abuse its discretion in summarily dismissing Ruggles' petition without a hearing pursuant to R.C. 2953.21(D).

## C. Res Judicata

{¶ 77} While we have addressed the application of res judicata to some of the arguments in Ruggles' PCR petition above, we need not examine whether the trial court properly held that res judicata applied to all of Ruggles' remaining arguments. This is the case because we have determined that the trial court did not abuse its discretion when it rejected all of Ruggles' PCR petition arguments on the merits. In other words, even if the trial court erred in finding that some or all of the arguments in the PCR petition were barred by res judicata, such error would be harmless because none of those arguments presented substantive grounds for relief. *See, e.g., Long*, 2021-Ohio-3651 at ¶ 46 (finding that any error in the trial court's decision to dismiss the appellant's postconviction petition on the basis of res judicata was harmless where the petition's claims did not demonstrate

substantive grounds for relief), citing *State v. Moore*, 2d Dist. Clark No. 2007 CA 123, 2008-Ohio-5376, ¶ 12 (the trial court's error in finding an ineffective assistance of counsel claim was barred by res judicata is harmless where the appellant failed to satisfy the substantive requirement of R.C. 2953.21). That is, even if some arguments raised by Ruggles' PCR petition were not barred by res judicata, he cannot establish any prejudice he suffered as a result of the trial court's res judicata analysis. *Id.*

### III. CONCLUSION

{¶ 78} After reviewing the evidence presented at trial and the information proffered by Ruggles in support of his PCR petition, including all of the affidavits and other evidence submitted with the PCR petition, we find the trial court did not abuse its discretion in dismissing the PCR petition without holding an evidentiary hearing. Finding no merit to any of Ruggles' arguments, we overrule Ruggles' assignments of error.

{¶ 79} Judgment affirmed.

PIPER, P.J., and M. POWELL, J., concur.